## DALE JAMES DiPASQUALE v. STATE OF MARYLAND

[No. 34, September Term, 1979.]

*Decided October 15, 1979.*

The case was argued before MOYLAN, MELVIN and WEANT, JJ.

*Domenic R. Iamele,* with whom were *Morton C. Pollack* and *Levy & Iamele* on the brief, for appellant.

*William H. Kenety, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Stephen Schenning, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Dale James DiPasquale, was convicted in the Circuit Court of Baltimore County in a court trial of possession with intent to distribute PCP and possession of marijuana. Upon this appeal, he raises the single contention that the judge erroneously refused to suppress the physical evidence. Reluctantly, we must agree.

The logic which compels this result will be more apparent if we begin at the end of the search and seizure sequence and work back to the beginning. Following his street arrest at 2:50 a.m. on April 17, 1978, the appellant was taken to the Essex Police Station. At the station, a routine search incident to the arrest was conducted. It produced eight small bags of PCP. If the arrest was lawful, the search incident thereto and the seizure of the PCP was reasonable. If, upon the other hand, the arrest was unlawful, the search incident thereto and the seizure of the PCP was unreasonable. "At the very threshold of search incident theory, the search must be incident not merely to an arrest but to a *lawful* arrest." *Dixon v. State,* 23 Md. App. 19, 26, 327 A.2d 516 (1974). We must, therefore, look backward to the arrest.

The appellant had been arrested warrantlessly a few minutes earlier for the unlawful possession of marijuana. Although legitimate peripheral observations established the likelihood that the appellant was *under the influence* of *some* drug, the necessary factor and the precipitating factor in this case for the arrest for *marijuana* possession was the seizure from the appellant's shirt pocket of what the officer, upon observing it out in the open, had probable cause to believe was a bag of marijuana. If the seizure of the bag was constitutional, the ensuing arrest was lawful. If the seizure of the bag was unconstitutional, the arrest must fall. The marijuana would have to be suppressed as the direct product

of the unconstitutional seizure and the PCP would have to be suppressed as the tainted fruit of that "poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Everything hinges upon that initial seizure, so we turn to the consideration of it.

What immediately preceded the seizure of the bag was, according to the State's interpretation, a mere accosting of the appellant by the police or, according to the appellant's interpretation, a stop within the contemplation of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It makes no difference which it was. Either would represent legitimate, reasonable police behavior. Neither would have served, upon the facts of this case, as an adequate predicate for the ensuing seizure. Even assuming a valid stop by the lights of *Terry,* what followed was not a frisk. The officer articulated no reasonable suspicion that the appellant was armed; the partially observed marijuana pouch was thought by the officer to be a tobacco pouch; indeed, the State did not at trial and does not now seek to justify the seizure upon a frisk rationale. "Frisk" law simply has no bearing on this case. A legitimate accosting of a citizen by a policeman or even a legitimate stopping and questioning of a citizen does not, *ipso facto,* confer any right to reach into a citizen's pocket and remove something from it. That additional intrusion requires its own distinct justification.

The only arguable justification here is that the object in question was in open view. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). As the State seeks to analogize the ensuing seizure to a Plain View Doctrine [1] seizure, as legitimately it may, the flaw in its argument is its neglect of the requirement that there be a nexus or probable cause to believe that the thing seen in

---

1. We rigorously restrict the formal Plain View Doctrine to those warrantless seizures that take place inside a constitutionally protected area following a prior valid intrusion into that area. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Brown v. State,* 15 Md. App. 584, 292 A.2d 762 (1972).

plain or open view is actually evidence of crime in order to justify its warrantless seizure.

In this case, the officer, armed with the reasonable suspicion that the appellant was intoxicated by drugs, noticed a plastic baggie partially protruding from the top, zippered portion of the appellant's jumpsuit. The officer further observed enmeshed within the folds of the baggie a few grains of what appeared to him to be cigarette tobacco. On cross-examination, the officer acknowledged that at the time he seized the baggie, he did not know nor even suspect that it contained anything other than cigarette tobacco. There is nothing in this record demonstrating that the officer here believed that the bag which he observed partially in open view was evidence of crime. This critical element of nexus or probable cause for a warrantless seizure was well articulated by Judge Levine in *State v. Wilson,* 279 Md. 189, 195, 367 A.2d 1223, 1227 (1977):

> "[I]t was not 'immediately apparent to the police that they [had] evidence before them.' This element, in essence, amounts to a requirement that police have probable cause to believe the evidence is incriminating before they seize it. As the court said in *United States v. Gray, supra,* 484 F.2d at 356, '[I]t must be "immediately apparent" to the police that the object is in fact incriminating or the seizure of the object would be without probable cause and would turn the search into a general or exploratory one.' [citations omitted]"

That the facts here might have established probable cause for an arrest of the appellant, even before the baggie was seized, and for a good search incident thereto which would have produced the baggie is beside the point. No arrest was made until after the seizure and the arrest was predicated on the observation of the thing seized.

In the alternative, that the visual, olfactory and auditory observations preceding the actual seizure might have been enough to give some other officer probable cause to believe that the partially observed baggie was, indeed, the repository

of probable marijuana is also beside the point. It is necessary that such belief abide in the seizing officer. For all that the record demonstrates, there was no such belief in the officer's mind in this case.

The subjective belief in the officer's mind is critical, for the entire thrust of the Fourth Amendment and its exclusionary rule is aimed at the reasonableness of police conduct. It is true that even a bona fide belief on the part of the policeman is never enough, standing alone, to justify a Fourth Amendment intrusion; we must still measure whether such a subjective belief was reasonable. The actual, subjective belief, however, is the indispensable starting point. Even though it is not a sufficient condition,[2] it is a necessary condition. That condition was not here established.

The State acknowledges that it did not prove affirmatively an actual belief on the part of the officer that the partially observed baggie probably contained marijuana. It counterpunches, very tentatively, that neither did the appellant disprove such actual belief on the part of the officer. The State is absolutely correct in its observation, but the point avails it nothing. Warrantless Fourth Amendment intrusions are presumptively unreasonable, *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and the burden is allocated to the State of showing adequate justification for the exceptional departure from the Fourth Amendment norm. In this case, we simply do not know whether the officer had or did not have such a subjective, actual belief. The resolving of doubt — the breaking of the tie — goes, by definition, against the party having the burden of proof. Under these circumstances, the burden was allocated to the State and the State failed to carry its burden. Were the burden allocated in the other direction, our result would be just the opposite. It is that elementary.

---

2. Let it be carefully noted that when we speak of the necessity for an actual belief by the officer himself, we are speaking not of an officer's belief as to the legal significance of that which he observes or thinks he observes but rather of the officer's belief as to what it is factually that he is observing. As to the distinct former situation, see *United States ex rel. Senk v. Brierly,* 381 F.Supp. 447 (M.D.Pa. 1974); 1 LaFave, *Search and Seizure,* 459-461 (1978). An officer's factual interpretation is pertinent even if his legal interpretation is not.

This absence of demonstrated actual belief that the thing observed was probably evidence of crime is, moreover, fatal to any alternative theory of justification for the warrantless seizure according to *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).

For guidance of the court upon retrial, we note that it would follow from all of the above that the appellant's confession, given shortly after his unlawful arrest and given as he was confronted with the evidence unconstitutionally seized, would also have to be suppressed. There was neither attenuation of taint nor a showing of independent source and it appears clearly that the confession was the tainted fruit of the poisonous Fourth Amendment tree. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

> *Judgment reversed; case remanded for new trial;* * *costs to be paid by Baltimore County.*

---

* We are not, of course, privy to all of the evidence that the prosecutor might theoretically have in his file (although it appears unlikely that there was any that was not used in this case) or such other evidence as might theoretically yet be developed. From our limited vantage point, however, it does appear highly unlikely that the prosecutor would opt to retry this case, in view of the suppression of all physical evidence and in view of the required future suppression of the confession. Although we assume that the State's Attorney will agree with our assessment in this regard, we nonetheless respect and recognize the right of the independent, constitutional office of the State's Attorney to make its own decision on this matter. Because our reversal is not upon the grounds of the legal insufficiency of the evidence, *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), we may not arbitrarily interfere with the exercise of independent judgment entrusted, as a part of our delicate system of checks and balances, to the executive branch of government. Cf. *United States v. Ewell,* 383 U.S. 116, 121, 86 S.Ct. 773, 15 L.Ed.2d 627, 631 (1966).