508 A.2d 1018

Tyrone **TRUSTY**

v.

**STATE of Maryland.**

**No. 1235, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

May 19, 1986.

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Nicolette H. Prevost, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty., for Baltimore City and Jonathan Shoup, Asst. State's Atty., for Baltimore City on the brief) Baltimore, for appellee.

Submitted before ALPERT, KARWACKI and WENNER, JJ.

ALPERT, Judge.

Tyrone Trusty, appellant, was charged by criminal information with assault, resisting arrest, and possession of heroin, cocaine, marijuana and paraphernalia.  After being convicted by a jury in the Circuit Court for Baltimore City, appellant was sentenced, on August 26, 1985, to consecutive prison terms totalling eight years on the possession charges.  He was also sentenced to consecutive terms of five years imprisonment for assault and three years for resisting arrest.  These two sentences, however, are to be served concurrently with the eight year sentence for the possessions convictions.

Appellant noted a timely appeal to this court and presents three questions for our review.

I.   Did the lower court err by denying appellant's motion to suppress evidence which was seized as a result of an arrest that was not based on probable cause?

II.  Did the lower court err by denying appellant's motion for judgments of acquittal because the evidence was insufficient?

III. Did the lower court err in denying appellant's motion for a mistrial because of a prejudicial instruction to the jury on the crime of possession of paraphernalia?

As we shall answer the first question favorably to appellant, we need not address the third question and need only briefly discuss the second question.

I.

Prior to the trial on the merits, counsel for appellant moved to suppress the incriminating physical evidence recovered "as a result of the arrest."  The sole premise for the motion was that evidence seized pursuant to an illegal

arrest is tainted and, therefore, not admissible against the person illegally arrested. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), cited in *DiPasquale v. State,* 43 Md.App. 574, 576, 406 A.2d 665 (1979). Appellant's premise is clearly based on this court's statement in *DiPasquale* that " '[a]t the very threshold of search incident theory, the search must be incident not merely to an arrest but to a *lawful* arrest.' " *Id.* at 574, 406 A.2d 665 (emphasis added) (citations omitted).

Appellant contends now, as he did below, that the arrest was illegal as it was made without a warrant and without probable cause. As we noted in *DiPasquale, supra* at 578, 406 A.2d 665:

Warrantless Fourth Amendment intrusions are presumptively unreasonable, *Schneckloth v. Bustamonte,* 412 U.S. 218 [93 S.Ct. 2041, 36 L.Ed.2d 854] ... (1973), and the burden is allocated to the State of showing adequate justification for the exceptional departure from the Fourth Amendment norm.

The question thus becomes whether the State, at the motions hearing, met its burden of demonstrating probable cause for the warrantless arrest. In reviewing the evidence presented below, we acknowledge our duty "to make an independent reflective constitutional judgment" as to the ultimate conclusions to be drawn from that evidence; *i.e.,* the existence of probable cause. *Parker v. State,* 66 Md. App. 1, 10–11, 502 A.2d 510 (1986).

At the hearing on the motion to suppress, the State's only witness was the arresting officer, Charles Dawkins. On direct examination, Dawkins testified that he was working in "plain clothes capacity, narcotics" on the evening in question. At approximately 8:00 p.m., he was standing in a "covert position" at the intersection of Preston and Broadway "making observations of narcotic trafficking in the area." He observed appellant and Alphonso Plummer walk to the rear of the southeast corner of the 1200 block of Broadway, "at which time they stopped walking." Dawkins continued:

It's a little walkway back there, like an alley. Mr. Trusty had a brown bag in his hand, large brown bag. He reached inside that bag, removed a manila envelope. This manila envelope was the size and shape of that kind we seized, that I had occasion to see, had been found to contain marijuana on that date and time. Considering the location and everything that led up to this incident, I observed Mr. Trusty remove from that manila envelope from the brown bag and pass it to Mr. Plummer. I believed it was a narcotics transaction in progress.

Q.. What did you do after that?

A. At that point, I called for assistance. At the same time, I kept both defendants under observation, at which point I identified myself as a police officer. They was beginning to leave the area. I identified myself to Mr. Trusty, particularly, at which point I placed my hand on him, on his arm, and attempted to place him under arrest. Mr. Trusty pulled away from me, breaking my grasp, begin to run southbound in the rear of 1200 block of Broadway toward Biddle Street.

Q. Did you eventually place him under arrest? Yes or no.

A. Yes, I did.

On cross-examination, defense counsel concentrated entirely on the seizure of the brown bag after the arrest. No further questions were asked by either side concerning Dawkins's grounds for the arrest.[1] Significantly, Dawkins did not testify about his prior experience as a police officer, his prior experience with narcotics and narcotics investigations, or whether the observed exchange between appellant and Plummer was similar to other drug transactions.

Notwithstanding these omissions in Dawkins's testimony, the trial court concluded:

---

**1.** We do not consider appellant's failure to point out the deficiencies of the State's proof of Dawkins's experience as a waiver. As we stated in *DiPasquale, supra,* the State has the burden of proving probable cause; the defendant is not required to show lack of probable cause.

All right, Gentlemen. I find that the officer is an experienced narcotics officer and he's operating in an area covertly, an area that is known to be an area of drug trafficking and his observation, from his testimony, fit the bill of the drug transaction. The Court feels that there is ample probable cause to support the search that followed.

Our independent review of the evidence indicates otherwise. Although the prosecutor, in his arguments to the court, stated at several instances that Officer Dawkins was an experienced police officer, the simple fact is that the witness did not so testify. Because statements by counsel are not evidence, the trial judge could consider only the witness's testimony in this case. We must, therefore, review the trial judge's conclusion to determine whether it was supported by the evidence.

As a fact finder, the trial judge first determined that "the officer is an experienced narcotics officer. . . ." As we have indicated, there was no *evidence* concerning Dawkins's experience as a police officer, much less a narcotics officer.

Second, the trial judge found "he's operating in an area covertly. . . ." On this point, there was evidence that Dawkins was in plain clothes and standing in a covert position.

Third, the area of the observation was concluded to be "an area that is known to be an area of drug trafficking. . . ." While Dawkins testified that he was "making observations of narcotic trafficking in the area," this does not support the conclusion that it was a "known drug trafficking area."

Finally, the trial judge concluded that Dawkins's "observation, from his testimony, fit the bill of the drug transaction." Again, we note there was nothing in Dawkins's testimony to indicate that the exchange between appellant and Plummer "fit the bill of [a] drug transaction."

It appears that *sub silentio* and indeed, unwittingly, the able and experienced trial judge took judicial notice of the experience and expertise of the police officer, the reputation

of the neighborhood, and the component facts of a drug transaction.

We recognize that trial judges, particularly in large metropolitan areas such as Baltimore City, tend to hear a large volume of criminal cases involving violations of the Controlled Dangerous Substances laws and, further, that they may repeatedly, as trial judges, witness the expertise of police officers specially trained in the investigation of narcotics. But, on the subject of judicial notice, we must remember that:

> What a judge knows and what facts a judge may judicially notice are not identical data banks. A famous colloquy in the Year Books shows that a clear difference has long been taken between what judges may notice judicially and the facts that the particular judge happens personally to know. It is not a distinction easy for a judge to follow in application, but the doctrine is accepted that actual private knowledge by the judge is no sufficient ground for taking judicial notice of a fact as a basis for a finding or a final judgment, though it may still be a ground, it is believed, for exercising certain discretionary powers, such as granting a motion for new trial to avoid an injustice, or in sentencing.

*McCormick on Evidence* at 922–23 (3d ed. 1984). Another noted commentator concurs in this view. *See* 9 J. Wigmore, *Evidence* § 2569 (3d ed. 1940).

█ Thus, we believe the law to be clear that a trial judge cannot apply the knowledge personally gained from one case to the quantum of evidence presented in a later case. But, even if that were not the posture of the law, there is nothing in the record herein to indicate that the trial judge had earlier knowledge of Officer Dawkins's training and expertise, or that in some prior case there was adequate testimony establishing the reputation of the subject neighborhood as being a "known drug trafficking area." To be sure, there was no such evidence of either fact which this court could glean from the record and certainly we ought

not ourselves judicially notice evidentiary material which is not a matter of common knowledge. *See McCormick on Evidence, supra,* chapter 35, *Judicial Notice.*

■ Assuming that those facts were available, the prosecutor had a duty to present them to the court. Failing such production, we reluctantly conclude that the trial judge erred in finding probable cause.

The State, however, sidesteps the deficiencies in the evidence. As to the finding of Dawkins's experience, the State maintains that:

> The judge reasonably inferred from the fact that the officer was assigned to a plain clothes detail in a narcotics division of the police force, that the officer had the expertise, experience and training which other officers similarly assigned possessed.

The State thus concludes that the trial judge's reliance on the officer's expertise was proper and cites our recent opinion in *Parker v. State,* 66 Md.App. 1, 502 A.2d 510 (1986).

In *Parker,* we recognized that

> Probable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of the arrest. The question to be answered is whether such an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested....

*Id.* at 8, 502 A.2d 510 (citations omitted). In *Parker,* however, the trial judge's finding of probable cause to arrest was amply supported from the testimony of the arresting officer. *See* 66 Md.App. at 4–6, 502 A.2d 510. In the case *sub judice,* as we have indicated, the evidence is quite insufficient.

In his excellent treatise on the Fourth Amendment, Professor LaFave states:

It has been held, for example, that the "standard is not what a police officer trained in a particular field would conclude, but rather it is what a reasonable, prudent man would conclude." If taken literally, this position is in error. However, it may be intended only to reflect the fact that the probable cause determination must ultimately be made by a judicial officer, who is not an "expert" in matters of law enforcement, and that consequently *it is incumbent upon the arresting or searching officer to explain the nature of his expertise or experience and how it bears upon the facts which prompted the officer to arrest or search.* For example, if an officer at a hearing on a motion to suppress were to say that he made the arrest because he saw what he as an expert recognized as a marijuana cigarette, this is not a showing of probable cause. Under the probable cause standard, it must "be possible to explain and justify the arrest to an objective third party," and this is not accomplished by a general claim of expertise. On the other hand, if the officer testifies fully concerning his prior experience with marijuana cigarettes and explains in detail just how it is possible to distinguish such a cigarette from other hand-rolled cigarettes, this testimony cannot be disregarded by the judge simply because it involves expertise not shared by the judge.

W. LaFave, 1 *Search and Seizure* § 3.2 at 463–64 (1978 and 1986 Supp.) (emphasis added; footnotes and citations omitted). This requirement, that the State affirmatively demonstrate the factors supporting the officer's probable cause, was apparently followed by this court in *DiPasquale v. State*, 43 Md.App. 574, 406 A.2d 665 (1979).

In *DiPasquale* we reversed a lower court's finding of probable cause, where the record failed to demonstrate the basis for the police officer's subjective and actual belief that a glassine bag on the defendant's person contained marijuana. In relevant part, the *DiPasquale* court stated:

The State acknowledges that it did not prove affirmatively an actual belief on the part of the officer that the

partially observed baggie probably contained marijuana.... In this case, we simply do not know whether the officer had or did not have such a subjective, actual belief. The resolving of doubt—the breaking of the tie—goes, by definition, against the party having the burden of proof. Under these circumstances, the burden was allocated to the State and the State failed to carry its burden. Were the burden allocated in the other direction, our result would be just the opposite. It is that elementary.

*Id.* at 578, 406 A.2d 665. A similar result was reached that same term in *Donaldson v. State,* 46 Md.App. 521, 420 A.2d 281 (1980). In *Donaldson,* the State sought to justify a warrantless search of a cannister on the defendant's person because "based on his training and experience the [police] officer was one hundred percent sure the cannister contained a controlled dangerous substance." In holding that the trial court should have granted the motion to suppress, we said that "even if we were to assume that [the officer's] experience with narcotics was extensive," the State still failed to explain adequately the officer's basis for his belief. *Id.* at 534, 420 A.2d 281. *See also United States v. Fisher,* 702 F.2d 372 (2d Cir.1983); *Sullivan v. State,* 626 S.W.2d 58 (Tex.Crim.App.1982); *Commonwealth v. Taglieri,* 378 Mass. 196, 390 N.E.2d 727, *cert. denied,* 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979).

■ In the instant case, the State simply failed to prove affirmatively the foundation for Officer Dawkins's belief that he was witnessing a drug transaction. Absent such proof, there was no evidence before the trial judge to support his finding.[2] As the "possession" convictions were

---

**2.** The State argues further that probable cause to arrest could be inferred from the fact that appellant attempted to flee once Dawkins had grasped his arm and identified himself as a police officer. We need not determine, as the State apparently would have us do, whether the arrest occurred when Dawkins grasped the appellant's arm or later, when Dawkins wrestled appellant to the ground. The trial judge's finding offers no indication that the factor of appellant's flight

clearly based on the introduction of the evidence, which we hold should have been suppressed, we must reverse those convictions.

## II.

■ Appellant's second contention assumes that the "attempted arrest" by Dawkins was unlawful. Accordingly, he now relies on our statements in *Kraft v. State,* 18 Md.App. 169, 173, 305 A.2d 489 (1973), and *In re Nawrocki,* 15 Md.App. 252, 263–64, 289 A.2d 846 (1972), that a person may legally resist an unlawful arrest even with force. While this arguably might have been adequate to justify reversal of the convictions for assault and resisting arrest, appellant failed to articulate these arguments to the trial judge in his motion for judgment of acquittal. As this court's decision in *Lyles v. State,* 63 Md.App. 376, 492 A.2d 959, *cert. granted on other grounds,* 304 Md. 362, 499 A.2d 191 (1985), expressly requires such articulation, we may not consider this issue on appeal.

JUDGMENTS FOR CONVICTION OF POSSESSION OF HEROIN, COCAINE, MARIJUANA AND PARAPHERNALIA REVERSED; JUDGMENTS FOR CONVICTION OF ASSAULT AND RESISTING ARREST AFFIRMED; COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND MAYOR AND CITY COUNCIL OF BALTIMORE.

---

was relied on at all. In any event, as appellant's flight was apparently provoked by the initial "attempt to arrest," this subsequent suspicious conduct may not be relied on to validate the previous illegal activity. *See Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963).