537 A.2d 1208

Brenda M. COOMES

v.

STATE of Maryland.

No. 650, Sept. Term, 1987.

Court of Special Appeals of Maryland.

March 3, 1988.

Certiorari Denied June 16, 1988.

378

Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, on the brief), for appellant.

Norman L. Smith, Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Atty. Gen., Baltimore, John L. Scarborough, State's Atty. for Cecil County and Keith A. Baynes, Asst. State's Atty. for Cecil County, Elkton, on the brief), for appellee.

Argued before GARRITY, ALPERT, and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Brenda M. Coomes, appellant, was convicted by a jury in the Circuit Court for Cecil County of possession of marijua-

na, possession of marijuana with intent to distribute, and possession of paraphernalia. The possession of marijuana charge having been merged into the intent to distribute charge, she was sentenced to a total of four years imprisonment. On this appeal from the judgments thus entered, she raises but one question: Did the trial court err in denying appellant's pretrial motion to suppress?

The facts out of which this appeal arose are rather interesting. Appellant and a male companion were arrested in connection with a breaking and entering that occurred in Havre de Grace, Maryland. While they were in custody, the police obtained a warrant authorizing the search for, and seizure of, a small black handgun [1], which witnesses reported was brandished by the male member of the duo during the breaking and entering. The application and affidavit in support of the warrant described the places to be searched as:

> the premises and the premises as completely described above and a vehicle described as a 1984 Ford Bronco, Maryland registration # 037950.

It also disclosed the reasons for the police focus on appellant, her male companion, and the premises described therein. Detective Corporal Downey learned from witnesses to the breaking and entering that the perpetrators were a white male and female. The white male, who was waving a black handgun in the air, punched out the front door window and entered the house, followed by the white female. When they exited the house, the man and woman entered a 1984 Ford Bronco, either blue or beige, with a damaged mirror and Maryland tag No. 037950. The description of the vehicle and its occupants was broadcast, which resulted in the location of the suspect vehicle at 208 McGlothlin Road in Conowingo, Cecil County, Maryland by the Maryland State Police. The vehicle having been secured and the area surrounded, the State Police approached the subjects and

---

1. Neither the application nor the warrant mentioned controlled dangerous substances or any object other than a small black handgun.

the white female admitted that she and her male companion had committed the breaking and entering. The white female was identified as appellant.

Notwithstanding the request in the application, the warrant only authorized the search of

"the premises known as 208 McGOUTHIN Road, Conowingo, Cecil County, Maryland, described as one story "L" shaped brick rancher with a shingle roof, with a cement wall in the rear of the house with decending [sic] steps to a sliding glass door which is the main entrance to the house." [2]

While appellant was still in custody, the police executed the warrant. They searched the premises at 208 McGlothlin Road and a 1986 Ford Bronco that was parked in front of the house. Recovered in the search, from various places in both the house and the vehicle, were suspected marijuana and controlled paraphernalia. Appellant was then charged with possession of marijuana with intent to distribute, possession of marijuana, and possession of paraphernalia.

Appellant filed a pretrial motion to suppress the introduction of the marijuana and paraphernalia into evidence at her trial, claiming numerous deficiencies in the warrant and its mode of service.

At the hearing on appellant's motion, the warrant was admitted into evidence, along with the return of the warrant, which described the items seized and the location from which they were seized. The return of the warrant noted the address of the premises as 208 McGlothlin Road.[3] Detective Downey testified to the circumstances leading to the issuance of the warrant and to the subsequent search of the house and the Bronco. He also testified that the return of the warrant accurately reflected the items found and the

---

**2.** The premises referred to in the affidavit were also 208 McGouthin Road, Conowingo, Cecil County, Maryland.

**3.** This is the correct spelling of the street name. Thus, the street name is misspelled in the application and affidavit, as well as in the warrant itself.

locations from which they were seized. On cross-examination, he acknowledged that the warrant did not specifically authorize the search of the Ford Bronco and that the warrant and the return of warrant specified different street names. Downey also conceded on cross-examination that, although he located the marijuana in the Bronco and pointed it out to other officers, who actually seized it, he was not present when some of the items in the house were seized. Indeed, he could not recall whether he or someone else found those items. Finally, Downey recalled that appellant told him that the automobile she was driving that day was an '86 Ford Bronco and stated that he believed that appellant told him it belonged to her husband. Downey was not asked, and he did not volunteer, what, if any, training or expertise he had in the identification of marijuana and controlled paraphernalia.

At trial, appellant made several arguments in support of her motion to suppress. First, she called attention to the fact that the street name of the premises was misspelled in the application for warrant and in the warrant itself, urging the court to find that deficiency to be fatal. Second, concluding that the police were on a "fishing expedition", *i.e.*, they were not looking for a gun, she argued that the police should have gotten a specific warrant for controlled dangerous substances once controlled dangerous substances, and not a handgun, were discovered. Appellant also argued that, inasmuch as the warrant authorized only the search of the house, the search of the Bronco was illegal, rendering the controlled dangerous substances recovered in the Bronco inadmissible. Appellant further expressed concern that some of the items seized were not illegal and did not result in charges being brought against her. The State's rejoinder was two-fold. As to the house, it argued that the legality of the seizure of the marijuana and paraphernalia followed from the court's finding that the warrant was validly issued on probable cause, and, as to the Bronco, the State's position was that appellant had no standing to contest the search. The latter argument was

advanced by the State for the first time during its argument on the motion to suppress, after the evidence on the merits of the search had been presented and appellant had argued the point.

The trial judge denied the motion to suppress. He ruled: All right. I'm going to rule that—I'm going to deny the motion to suppress as to the goods found in the house. I think there's certainly, in looking at the four corners of the search, the application and warrant, there certainly was ample evidence and grounds to issue the search warrant for the house.

Now, I realize that the Bronco, although it mentioned the year erroneously numerous times in the application of search warrant was not included in the actual search warrant itself, however I'm going to deny the motion to suppress on the items found in the Bronco at this point on the basis that the Defendant, Mrs. Coomes, by the testimony in the case had no possessory or ownership interest in the Bronco, and obviously Mr. Smith has none either. So I'm going to deny them on this basis.

On the issue of standing, the court found that there was no evidence that appellant had a possessory or propriety interest in the Bronco. It found significant, in this regard, Det. Downey's testimony that appellant told him that the Bronco belonged to her husband. The court apparently also found significant appellant's protestation that the Bronco she drove was a 1986, rather than a 1984, the year of the Bronco referred to in the application for the search warrant.

On appeal, appellant contends that the lower court erred by: (1) determining that appellant had no standing to contest the search of the Bronco; (2) finding that the search warrant for the house was valid when the warrant failed to particularly describe the place to be searched;[4] and (3) finding that the controlled dangerous substances and para-

---

4. The chief foci of this argument are the misspelling of the street name in the application and the warrant and the failure of the warrant to specifically authorize a search of the Bronco.

phernalia were lawfully seized under the warrant when the State failed to establish that the search and seizures satisfied any exception to the warrant requirement. In appellant's view, the latter argument has application to both the search of the house and the Bronco; however, as we will see *infra*, it actually applies only to the search of the home.

Appellant argues that since the warrant at issue here authorized search only of the house and then only for a small black handgun, the seizure of the marijuana and paraphernalia may not be justified pursuant to the warrant. To justify the seizures made, she continues, "the State must shoulder the heavy burden of showing that one of the exceptions [to the warrant requirement] applies." *State v. Wilson*, 279 Md. 189, 194, 367 A.2d 1223 (1977). *See also DiPasquale v. State*, 43 Md.App. 574, 578, 406 A.2d 665 (1979), in which we stated: "[w]arrantless Fourth Amendment intrusions are presumptively unreasonable, *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and the burden is allocated to the State of showing adequate justification for the exceptional departure from the Fourth Amendment norm." Appellant asserts that the State failed to establish that the seizures fell within any exception to the warrant requirement. Specifically, she vigorously denies that the State proved circumstances sufficient to establish that the seized items were seized pursuant to the plain view doctrine. In short, it is appellant's position that the State failed to meet its burden of proving that there was probable cause for the seizures in this case. *See Trusty v. State*, 67 Md.App. 620, 624 n. 1, 508 A.2d 1018 (1986), *rev'd on other grounds*, 308 Md. 658, 521 A.2d 749 (1987); *DiPasquale*, 43 Md.App. at 578, 406 A.2d 665.

Not unexpectedly, the State maintains that the court correctly denied the motion to suppress. It relies upon the plain view doctrine to justify the seizure from both the house and the Bronco. Specifically, on this point, the State argues:

Police here were in search of (but never found) a small black handgun. The items recovered and their places or origin are listed on the return ... No listed places is inferably too small to contain a handgun. Appellant indulges in much creative appellate afterthought, speculating as to how the various places searched *might* not have accommodated the handgun. These contentions were not raised or explored at the hearing. Because the officers were lawfully on the premises, the seizures of items in "plain view" [were] valid. (emphasis in original, footnote omitted).

Because the Bronco was not listed on the warrant as a place specifically authorized to be searched, and the court did not make a finding that its exclusion was inadvertent, the State recognizes that it must justify the search of the Bronco. Thus, the State contends, first, that the Bronco is included in the term "the premises". *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965) is cited for the proposition that exclusion of the Bronco from the term "premises" would constitute the kind of "grudging ... negative attitude by reviewing courts toward warrants [which] will tend to discourage police officers from submitting their evidence to a judicial officer before acting." [5] Second, the State proffers that the warrantless search of the Bronco is justified by the *Carroll* doctrine. *See Carroll*

---

5. *Haley v. State,* 7 Md.App. 18, 253 A.2d 424 (1969) and cases from other jurisdictions, *e.g. United States v. Asselin,* 775 F.2d 445 (1st Cir.1985); *United States v. Percival,* 756 F.2d 600 (7th Cir.1985); *United States v. Bulgatz,* 693 F.2d 728 (8th Cir.1982); *United States v. Freeman,* 685 F.2d 942 (5th Cir.1982) are relied upon as supporting its conclusion that an automobile, not specifically mentioned in the warrant, but found "on the premises", is appropriately searched pursuant to any warrant. The facts of those cases are distinguishable from those at issue here. In none of them was there a request made in the application for the warrant that permission be given to search a motor vehicle, which permission was not explicitly granted. Striking the word "motor vehicle" from the application, as occurred in *Bulgatz,* is clearly a different situation. Moreover, in each of the federal cases, the motor vehicle searched was unquestionably within the curtilage of the property, a fact which is far from clear in this case. In any event, it is unnecessary that we consider the merits of the issue.

*v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).[6] Finally, the State asserts, as the trial judge found, that appellant did not prove that she had standing to contest the search.

The analysis appropriate to determining the propriety of the court's ruling as it relates to the seizures from the house is different from and yields a different result than that applicable to the seizures from the Bronco. Consequently, we will address them separately.

■ Addressing the seizures from the house first, we agree with appellant: if the seizures are to be sustained, it must be because the items in questions were seized pursuant to a valid warrantless Fourth Amendment intrusion. *See Ross v. State,* 59 Md.App. 251, 257, 261–62, 475 A.2d 481, *cert. denied, State v. Ross,* 301 Md. 177, 482 A.2d 502 (1984); *Brooks v. State,* 235 Md. 23, 29–30, 200 A.2d 177 (1964). The object of the search warrant was a small black handgun, not marijuana or paraphernalia. Thus, the items seized were not within the scope of the warrant. Since they were not, their seizure may not be justified on the basis of that warrant.

■ The plain view doctrine is an exception to the warrant requirement. *See State v. Wilson,* 279 Md. at 194–95, 367 A.2d 1223; *Ross v. State,* 59 Md.App. at 161–62, 475 A.2d 481; *DiPasquale v. State,* 43 Md.App. at 576–78, 406 A.2d 665.

---

6. The State explicates the doctrine as follows: "The so-called automobile exception proceeds on the rationale that, because an automobile (or any vehicle) is inherently mobile, it may be searched without a warrant where police have 'probable cause in the constitutional context to believe that the vehicle contains the fruits, instrumentalities, or other evidence of a crime.' *Barrow v. State,* 59 Md.App. 169, 180 [474 A.2d 967] (1984)." In addition, the State suggests that the search was justified by virtue of the "reduced expectation of privacy stemming from [an automobile's] use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling." *See California v. Carney,* 471 U.S. 386, 393, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406 (1985).

This doctrine serves to supplement a previously justified intrusion, such as a search warrant for other property, and permits a warrantless seizure.... The exception, on the other hand, may not be used to expand a justified, but limited, intrusion into a general exploratory search of a person's belongings until something incriminating at last emerges.... To confine the exception within these boundaries, the Court prohibited the use of any evidence seized outside the warrant unless (1) the police have a prior justification for the intrusion; (2) they find the evidence in plain view; (3) they find it inadvertently; and (4) it is "immediately apparent to the police that they have evidence before them...." (citations omitted)

*Wilson*, 279 Md. at 194–95, 367 A.2d 1223. *See generally Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Thus, it is clear, in order to justify a warrantless seizure pursuant to the plain view doctrine, in addition to demonstrating that the police had prior valid justification for the intrusion, *see Coolidge*, 403 U.S. at 466, 91 S.Ct. at 2038, the State must prove circumstances which show that the evidence seized was found inadvertently, in plain view, and was such that the police were immediately aware of its significance. The latter three requirements are but a different and more precise way of stating that the circumstances must demonstrate that the police had probable cause to make the seizure, an issue upon which the State bears the burden of proof. *DiPasquale v. State*, 43 Md. App. at 578, 406 A.2d 665; *Trusty v. State*, 67 Md.App. at 624 n. 1, 508 A.2d 1018. Moreover, the State's burden is not in any way affected by an accused's failure to point out deficiencies in the State's presentation of the evidence necessary to meet that burden. *Trusty, supra.* Therefore, whether or not the accused argued in in the court below the existence of a deficiency in the State's proof of probable cause, if, upon our independent constitutional reflective review of the evidence, *see Parker v. State*, 66 Md.App. 1, 10–11, 502 A.2d 510, *cert. denied*, 306 Md. 70, 507 A.2d 184

(1986), we determine that the State failed to prove any one of the four requirements of the plain view doctrine, reversal of the denial of the motion to suppress is mandated. *See Trusty*, 67 Md.App. at 625–630, 508 A.2d 1018.

With these principles in mind, we now consider whether, in the case *sub judice*, the evidence presented at the suppression hearing was sufficient to prove that the seizures were made pursuant to the plain view doctrine.

As we have seen, Det. Downey was the only witness called by the State to justify the seizures from the house and the Bronco. His testimony concerning the seizures from the house was far from complete: he did not know who found and seized any of the items recovered; he did not know the order in which the items were seized; he was unable to testify as to the circumstances surrounding the discovery of any of the items; he did not know the location, except as set forth in the return of warrant, from which the items were taken. Det. Downey could only testify that the items seized were those contained in the return of warrant. Our independent constitutional reflective review of the record leads us to conclude that, inasmuch as Det. Downey's testimony failed to establish any of the circumstances surrounding the seizures from the house, only one of the four predicates—prior valid intrusion pursuant to the warrant—necessary for invoking the plain view doctrine was established. Thus, we hold that there was insufficient evidence presented to justify reliance on the plain view doctrine.

Even if we were to accept the State's argument that, since the places searched were not inferably too small to contain a handgun, we may assume, especially when the point is not specifically argued by appellant, that the items were inadvertently found and were in plain view, we still would not agree that the trial judge correctly denied appellant's motion to suppress. The record is noticeably deficient as to the seizing officers' expertise and experience with controlled dangerous substances. Det. Downey, the

only officer to testify, did not mention the subject. Indeed, the only information bearing on the expertise and experience of any of the officers is that contained in the application for warrant, and that only relates Det. Downey's experience in the investigation and handling of violent and property crimes. Our review of the record reveals, therefore, that there was no evidence produced from which the court could have concluded that the seizing officers, by reason of their training and experience, had probable cause to believe that the items seized were marijuana and paraphernalia. The trial judge may not take judicial notice of the experience and expertise of a police officer and, from that, find probable cause for the seizure of evidence. *Trusty v. State*, 67 Md.App. at 626, 508 A.2d 1018.

In *Trusty*, on the basis that "the officer is an experienced narcotics officer and he's operating in an area covertly, an area that is known to be an area of drug trafficking and his observation, from his testimony, fit the bill of the drug transaction," the lower court found "ample probable cause to support" a search. *Id.*, 67 Md.App. at 625, 508 A.2d 1018. The testimony, however, did not support the court's findings, either as to the officer's experience or the characterization of the area in which he was working. In finding, upon our independent review of the record, that there was insufficient evidence to establish probable cause, we said:

Thus, we believe the law to be clear that a trial judge cannot apply the knowledge personally gained from one case to the quantum of evidence presented in a later case. But, even if that were not the posture of the law, there is nothing in the record herein to indicate that the trial judge had earlier knowledge of Officer Dawkins's training and expertise, or that in some prior case there was adequate testimony establishing the reputation of the subject neighborhood as being a "known drug trafficking area". To be sure, there was no such evidence of either fact which this court could glean from the record and certainly we ought not ourselves judicially notice evidentiary material which is not a matter of common knowl-

edge. *See* McCormick on Evidence [3rd Ed. 1984], Chapter 5, Judicial Notice.

Assuming that those facts were available, the prosecutor had a duty to present them to the court. Failing such production, we reluctantly conclude that the trial judge erred in finding probable cause.

*Id.,* 67 Md.App. at 626–27, 508 A.2d 1018.

This is precisely the posture of the instant case. The officers who seized the evidence from the house are unknown and, consequently, so too is their experience in narcotics matters. We cannot know from the record produced in this case whether it was readily apparent to them what it was they were seizing when they seized it. *See DiPasquale,* 43 Md.App. at 577–78, 406 A.2d 665 (noting that probable cause to seize contraband requires that the seizing officer believes what he is seizing is indeed contraband).[7] Accordingly, we hold that the State failed to establish probable cause for the seizures. It follows that the motion to suppress the items seized from the house should have been granted.

The State's reliance upon *Texas v. Brown,* 460 U.S. 730, 741–42, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) for the proposition that "once a lawful search is underway, '[t]he seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable,* assuming that there is probable cause to associate the property with criminal activity' " (emphasis in original), misses the point because it assumes the very point that is at issue: that the State met its burden of proving that the items seized were, in fact, in plain view. · Given the lack of any evidence in the record as to the seizing officers', including Det. Downey's, expertise and experience with narcotics, specifically mari-

---

7. Although we know that Det. Downey found the marijuana recovered from the Bronco and pointed it out to other officers, the record is similarly devoid of evidence sufficient to establish his training and experience or that of the officers who actually made the seizures. Hence, were the issue presented, a similar result would obtain as to the Bronco.

juana and paraphernalia, the premise upon which that holding is based does not exist in this case.[8]

Our resolution of appellant's challenge to the search of the Bronco requires that we address the standing issue. This is so because the court's ruling is premised upon appellant's lack of standing, which if correct, would render irrelevant any argument based upon the failure of the State to prove that the police had probable cause for the seizures. On the other hand, if that ruling were incorrect, either because the court should have reached the merits, or because it was clearly erroneous, then our resolution of the plain view issue is dispositive, not only as to the seizures from the house, but as to those from the Bronco, as well. See notes 7 and 8 *supra*.

The State is absolutely correct: "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Thompson v. State*, 62 Md.App. 190, 202, 488 A.2d 995, *cert. denied*, 303 Md. 471, 494 A.2d 939 (1985), citing *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978). *See also McMillian v. State*, 65 Md.App. 21, 31, 499 A.2d 192 (1985); *Bates v. State*, 64 Md.App. 279, 282, 494 A.2d 976 (1985). It is also true, however, that, procedurally:

---

**8.** Insofar as the Bronco is concerned, the prior justification for the intrusion is not as strong as it is with regard to the house. The trial court stated the problem very succinctly:

The Court: You mentioned the Bronco. All they want in the application, for one reason or another, it wasn't in the warrant. It could be because they left it out. It could be because they intended to leave it out. It could be because it was a mistake that he left it out. It could be because Judge McKinney said, "I'm not going to give you a warrant on the Bronco." I mean there's many reasons why. Now, my gut feeling is that they just left it out. But I can't go on gut feeling.

The State recognizes that this is so as its proffer of alternative theories to justify the police presence attests. Notwithstanding this difference, but for the standing problem, the analysis employed to the search of the house would apply just as well to the search of the Bronco.

it is clear that there is an initial burden on the prosecution to raise the challenge to standing. If the State fails to raise a timely challenge and the court goes on to reach the Fourth Amendment merits, the State will be estopped from raising the challenge at a later stage. If the prosecution does raise the challenge, however, by even the most informal of oral pleadings, it is then clear that the burden of proof is allocated to the defendant to show his standing. The State has no obligation to show non-standing.

*Thompson*, 62 Md.App. at 202–03, 488 A.2d 995, citing R. Gilbert and C. Moylan, *Maryland Criminal Law: Practice and Procedure*, at 291–292 (1983). *See Bates*, 64 Md.App. at 283, 494 A.2d 976. To support the proposition that the State's failure timely to challenge standing estops the State to raise the challenge at a later time, Gilbert and Moylan cited to *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), in which the Supreme Court announced such a holding. In that case, the government contended on appeal that the record did not clearly show the accused had a reasonable expectation of privacy in the searched house. The Court rejected that contention, pointing out:

Aside from arguing that a search warrant was not constitutionally required, the Government was initially entitled to defend against petitioner's charge of an unlawful search by asserting that petitioner lacked a reasonable expectation of privacy in the searched home, or that he consented to the search, or that exigent circumstances justified the entry. The Government, however, may lose its right to raise factual issues of this sort before this Court when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation.

*Id.*, 451 U.S. at 209, 101 S.Ct. at 1646. Concluding that the case before it fit the mold it had fashioned, the Court explained:

The Magistrate's report on petitioner's suppression motion, which was adopted by the District Court, characterized the issue as whether an arrest warrant was sufficient to justify the search of "the home of a third person", for the subject of a warrant. . . . The Government never sought to correct this characterization on appeal, and instead acquiesced in the District Court's view of petitioner's Fourth Amendment claim. Moreover, during both the trial and the appeal in this case the Government argued successfully that petitioner's connection with the searched home was sufficient to establish his constructive possession of the cocaine found in a suitcase in the closet of the house. Moreover, the Court of Appeals concluded, as had the Magistrate and the District Court, that petitioner's Fourth Amendment claim involved the type of warrant necessary to search "premises belonging to a third party. . . ." Again, the Government declined to disturb this characterization. When petitioner sought review in this Court, the Government could have filed a cross-petition for certiorari suggesting, as it does now, that the case be remanded to the District Court for further proceedings. Instead, the Government argues that further review was unnecessary. Finally, the Government in its opposition to certiorari expressly represented that the searched home was petitioner's residence. (footnotes and citations omitted)

451 U.S. at 209–210, 101 S.Ct at 1646. The challenge to standing in *Steagald* was made long after the lower court had ruled on the merits of the search. A noted commentator has suggested that the court rested its ruling primarily upon the government's "untimely retreat to the standing issue". LaFave "Search and Seizure, A Treatiste on the Fourth Amendment", 2d Ed. Vol. 4 § 11.7(d) 526 (1987). We agree with this assessment. We also believe that it points the way to the resolution of the standing issue in this case.

■ Requiring the State to challenge standing in a timely fashion not only recognizes traditional policies of notice and

fair play, LaFave, *supra,* but also serves to promote the "avoidance of unnecessary litigation which is a key purpose of the standing requirement." *Shoemaker v. State,* 52 Md.App. 463, 466, 451 A.2d 127 (1982). The latter purpose is completely vitiated when the Fourth Amendment merits have not only been raised but have been completely litigated, prior to standing being raised as an issue. When this occurs, the State will necessarily have "acquiesced in reaching the Fourth Amendment merits ... and since the very avoidance of unnecessary litigation which is a key purpose of the standing requirement [will not have been] accomplished, the State will not be heard to raise the issue [thereafter]." *Shoemaker,* 52 Md.App. at 466, 451 A.2d 127, citing *Steagald, supra* and *Combs v. United States,* 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972).

When standing to object to a search is not raised preliminarily, what is "timely" will vary from case to case. Moreover, in such cases, no bright line rule can, or ought, be established; its determination is properly vested in the sound discretion of the trial judge. A much clearer case is presented, however, when the challenge comes after a ruling on the merits. *See Steagald, supra.* This is so because in that case, there can be no doubt that the court reached the Fourth Amendment merits. With this in mind, we have reviewed the record in this case to determine if the trial judge abused his discretion in entertaining the State's challenge to appellant's standing to contest the search of the Bronco.

The record indicates that the State did not file any pleadings challenging standing before the hearing on the motion; nor did it intimate in its presentation of the evidence that it intended to raise that issue. Indeed, even when it finally raised the issue, the State proffered that appellant, and not it, had initially posed the question. Clearly, an accused does not have "the burden of alleging his own standing before it has been challenged." *State v. White,* 635 S.W.2d 396, 399 (Tenn.Crim.App.1982). The State raised the standing issue only after it had presented its case on the Fourth

Amendment merits, appellant had argued the merits of her motion to suppress, the court had expressed concern, on the merits, about the search of the Bronco, and the State had begun its argument on the merits. Nevertheless, it did so before the court ruled on the motion.

 We hold that the trial judge did not abuse his discretion in entertaining and adopting the State's standing argument. Although the State did not raise the issue initially and, indeed, raised it for the first time during argument, it did so, as we have seen, before the court had reached the Fourth Amendment merits and, consequently, at a time which was early enough for appellant, if she desired, to have responded to the argument and/or to have presented evidence on the point. Furthermore, the State raised the issue without objection from appellant on the basis that it was untimely. And appellant never sought an opportunity to present additional evidence.[9]

 The evidence relevant to appellant's standing consisted of the following. On cross-examination by appellant, Det. Downey answered yes to appellant's question whether appellant told him that "she and her husband owned [the house] it by tenants by the entireties, jointly."[10] Det. Downey also testified that he did not know in whose name the Bronco was titled, although he stated that appellant said that it was not hers. Further, he could not recall whether appellant's keys, which he recalled included the key to the house, and which he took from the Havre de Grace police station, included the keys to Bronco. The testimony

---

**9.** Of course, when the issue is raised during argument, the trial judge must be careful to ensure that an accused has the opportunity, if he or she wishes, to meet the argument, either by way of issue or by presenting evidence. This may require the court to offer the opportunity *sua sponte* or, upon request, to postpone the hearing. Ordinarily, however, an issue concerning whether an accused was denied such an opportunity will not be generated unless the accused objects or offers to present evidence.

**10.** No issue of appellant's standing to contest the search of the house was raised either below or on appeal.

established that appellant was driving a Bronco, although there was a discrepancy between appellant and the State as to whether it was a 1986, which appellant admitted driving, or a 1984, as described in the warrant. The discrepancy was resolved by the court's finding that the warrant inaccurately described the Bronco as a 1984 Bronco. Finally, although proffering, during argument, that appellant's name was on the loan for the Bronco [11], counsel for appellant later admitted that her name was not on its title. Counsel also stated that the Bronco was "on the property". It may very well be that appellant, had she presented evidence on the point, could have established her standing to challenge the search of the Bronco; however, on this record, we are unable to say that the court was clearly erroneous in ruling that she did not have standing.

Having determined the court erroneously denied appellant's motion to suppress as to the items seized from the house, but correctly denied the motion as to the items seized from the Bronco, it remains for us to determine what effect, if any, the former ruling has on the judgments rendered in this case. The record [12] reflects that all of the paraphernalia upon which appellant's conviction of possession of paraphernalia was based was recovered from the house and that six of the eleven bags of marijuana recovered, also came from the house. Since appellant was convicted of possession of marijuana with the intent to distribute, and the quantity of marijuana as well as the related

---

11. The State objected to the proffer as not being in evidence. The court did not specifically rule on the objection although it acknowledged that no evidence to that effect had been presented at the hearing.

12. The record in this case, strangely enough, does not contain a copy of the return of the search warrant. Appellant, in her brief, provided us with a copy of one page of the return, which contains a partial list of evidence recovered from the house and of all the evidence recovered from the Bronco. The transcript of the proceedings provides a more complete list of the items recovered, although it is not quite so clear on the question of the places from which the items were recovered.

paraphernalia tends to supply the intent, it follows that the evidence seized from the house must have played a significant role in the jury's verdict. This is especially so when it is considered that appellant was tried on a three-count indictment which did not, by its terms, distinguish the marijuana recovered from the house from that recovered from the Bronco. Thus, the illegally admitted evidence "permeated the proceedings", *see Trusty v. State,* 308 Md. 658, 669, 521 A.2d 749 (1987), and, consequently, was not harmless beyond a reasonable doubt. *Id. See Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976). The judgments therefore must be reversed and the case remanded for a new trial. On remand, only that evidence seized from the Bronco may be introduced at the new trial.

JUDGMENT REVERSED. CASE REMANDED FOR NEW TRIAL.

COSTS TO BE PAID BY CECIL COUNTY.