567 A.2d 158

**STATE of Maryland**

v.

**Levorre CHEEK, Rickey Anthony Perry and Barbara M. Waters.**

**No. 906, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Dec. 22, 1989.

Certiorari Granted Feb. 13, 1990.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellant.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellees.

Argued before GILBERT, C.J., and BISHOP and WENNER, JJ.

GILBERT, Chief Judge.

Levorre Cheek, Rickey A. Perry, and Barbara M. Waters were passengers in a 1979 Buick owned and operated by Able Austin. Mr. Austin had recently purchased the vehicle in the District of Columbia; it bore a "D.C." temporary plate on the rear of the vehicle, but there was no front license tag.

Late on the morning of February 28, 1989, Prince George's County Police Officer Barry Beck was seated in a police cruiser on a parking lot,[1] observing moving traffic on the adjacent road. Officer Beck's duty that morning was to stop vehicles that lacked a front license plate.

By happenstance, Austin and his passengers were traveling on the road that was being observed by Beck. When Officer Beck noticed that Austin's vehicle had the front tag missing, the officer immediately drove from the parking lot and began a pursuit of Austin. Observing the flashing lights and hearing the siren of the police cruiser, Austin

---

1. The Quonset Hut parking lot is located on the corner of Naylor Road and Oxon Run Drive in Prince George's County.

pulled his automobile to the right side of the road. Beck drove up and stopped behind Austin's car.

Observing a D.C. temporary tag, the expiration date of which was blurred, affixed to the rear of Austin's vehicle, Officer Beck decided to make further inquiry. He radioed for a motor vehicle check of the tag, alit from his vehicle, and approached the driver's side of Austin's car. Beck requested Austin to produce a driver's license and vehicle registration card. Austin responded that he did not have a driver's license, but he showed a registration card to Beck.

Returning to the police cruiser, Beck requested a motor vehicle license and warrant check. He was advised there was an open warrant for Austin's arrest on the ground of welfare fraud. The radio communications between Beck and the dispatcher were overheard by Prince George's County Police Officer Edward Talik who had joined Beck at the scene. Thereafter, Beck and Talik returned to Austin's Buick. Beck proceeded to the driver's side, and Talik approached on the right. Austin was placed under arrest. While Austin was being handcuffed, he was asked if he had any weapons. Austin responded that there was a handgun in the pouch on the back of the right front seat.

Officer Talik then ordered Cheek, Perry, and Waters out of the vehicle. Talik performed a cursory weapons pat down of the trio. The policeman then reached into the described pouch and extracted a .38 caliber revolver. Once the handgun was secured, Officer Talik informed Cheek, Perry, and Waters that they were under arrest, and he began to handcuff them. Because of a shortage of hand-cuffs, Officer White was summoned to the scene to provide assistance.

Mr. Cheek was then patted down a second time. During the search, Officer Talik discovered five .38 caliber bullets in Cheek's coat pocket.

While the search of Cheek was going on, Officer White was busy searching Mr. Perry. A quantity of "rock" cocaine was found on Perry's person. Shortly thereafter, a

third search was performed on Perry by Officer Talik, who discovered more cocaine, paper baggies, and a scale in Perry's clothing.

Ms. Waters was not physically searched until a female police officer arrived. The officer, who happened to be in the area, responded to the call, and searched Ms. Waters. All three of the Austin vehicle's occupants were then transported to the police station for further questioning.

Austin, Cheek, Perry and Waters were each charged with 1) possession of CDS (cocaine) with intent to distribute, 2) possession of CDS (cocaine), and 3) transportation of a handgun. Cheek was additionally charged with possession of drug paraphernalia.

Cheek, Perry, and Waters moved to suppress, and a hearing was held in the Circuit Court for Prince George's County. The motions judge ruled that Officer Beck was justified in stopping the Austin vehicle, but once he discovered that the rear plate was a temporary tag, he should have halted his investigation. The judge characterized further police action as a "fishing expedition." Because the "fishing expedition" was declared improper, all that flowed from it was held to be inadmissible. The motion to suppress was granted.

The State appealed pursuant to Md.Cts. & Jud.Proc.Code Ann. § 12–302. We are asked to hold that 1) Cheek, Perry, and Waters lacked standing to challenge the stop of Austin's automobile because they were merely passengers and demonstrated no expectation of privacy; and 2) the motions court erred in suppressing the evidence because there was sufficient justification to stop Austin's car.

Because we agree with the State on the first issue, we need not address the second. The State maintains that the passengers in Austin's vehicle lack standing to question the initial stop of Austin's car. This argument is premised upon the assertion that passengers have no reasonable expectation of privacy in the automobile in which they are passengers, absent a possessory or proprietory interest in it.

A review of the record discloses that the State challenged the appellees' standing throughout the hearing on the suppression motion. This Court in *Coomes v. State*, 74 Md. App. 377, 392, 537 A.2d 1208 (1988), said:

"[I]t is clear that there is an initial burden on the prosecution to raise the challenge to standing. If the State fails to raise a timely challenge and the court goes on to reach the Fourth Amendment merits, the State will be estopped from raising the challenge at a later stage. If the prosecution does raise the challenge, however, by even the most informal of oral pleadings, it is then clear that the burden of proof is allocated to the defendant to show his standing. The State has no obligation to show non-standing."

*See also Thompson v. State*, 62 Md.App. 190, 202–03, 488 A.2d 995 (1985); R. Gilbert and C. Moylan, *Maryland Criminal Law: Practice and Procedure*, at 291–92 (1983). The standing issue raised by the State in the case *sub judice* was timely. The burden of proof, therefore, shifted to the defendants who were afforded ample opportunity to present proof of their standing.

To establish standing, a person seeking to invoke application of the Fourth Amendment and its protections must "claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by [the] government...." *Ricks v. State*, 312 Md. 11, 26, 537 A.2d 612 (1988), citing *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2579, 61 L.Ed.2d 220 (1979).[2]

In determining when a legitimate expectation of privacy exists, two distinct questions must be answered.

"[T]he first is whether the individual, by his conduct, has exhibited a subjective expectation of privacy (that he seeks to preserve something as private), and the second

---

2. *See also Katz v. United States*, 389 U.S. 347, 359, 88 S.Ct. 507, 515, 19 L.Ed.2d 576, 586 (1967); *Rakas v. Illinois*, 439 U.S. 128, 143, n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978).

question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable (whether the individual's expectation, viewed objectively, is justifiable under the circumstances). A legitimate 'expectation of privacy by definition means more than a subjective expectation of not being discovered.' "

*Rakas,* 439 U.S. at 143, n. 12, 99 S.Ct. at 430, n. 12, quoting *Ricks,* 312 Md. at 27, 537 A.2d 612.

It is patent in the instant case that the driver/owner of the vehicle, Austin, has standing to challenge the police stop of the automobile. That, however, is not the issue before us.

Cheek, Perry, and Waters, the record reveals, did not produce even a gossamer of evidence that they had a subjective expectation of privacy in Austin's vehicle. The standing threshold was not crossed at the hearing. Since there was no evidence that Cheeks, Perry, and Waters had standing to complain about the initial stop of Austin's vehicle, it was error to suppress the evidence.

JUDGMENT REVERSED. INDICTMENTS REINSTATED AND CASE REMANDED FOR FURTHER PROCEEDINGS.

COSTS TO BE PAID BY APPELLEES.