598 A.2d 830

**John Lavon BURGESS**

v.

**STATE of Maryland.**

**No. 94, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Dec. 4, 1991.

524

**526**

Veronice A. Holt (Ronald Goodbread, on the brief), Washington, D.C., for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before WILNER, C.J., and GARRITY and ALPERT, JJ.

ALPERT, Judge.

The State of Maryland, in a 90 count indictment, charged John Lavon Burgess, appellant, with numerous violations of the criminal laws including Assault with Intent to Murder, Assault with Intent to Maim, Assault with Intent to Disable, Assault and Battery, and Malicious Destruction of Property. All of the charges stemmed from a rock throwing barrage along Interstate 95 (I–95)[1] in Prince George's County, Maryland. The lower court severed Burgess's trial from that of his co-defendants, Maurice Edward Ford and Donnell Petite. Burgess elected a bench trial. After a short trial, the court reached the following verdicts.

---

1. Portions of the Capital Beltway (495) overlap with I–95 in Maryland.

## Counts Guilty[2]

| A–Murder | A–Maim | A–Disable | A & Battery | Prop. Destruct. |
|---|---|---|---|---|
| | 2 | 3, 7, | 4, 8, 11, | 5, 21, 33, 39, |
| | | 19, 31, | 14,* 20, | 43, 46, 56, |
| | | 66, 76, | 23,* 32, | 59, 62, 68, |
| | | 88 | 40,* 42,* | 72, 78, 85, 90 |
| | | | 45,* 55,* | |
| | | | 58,* 61, | |
| | | | 67, 77, 89 | |

## Counts Not Guilty

| A–Murder | A–Maim | A–Disable | A & Battery | Prop. Destruct. |
|---|---|---|---|---|
| 1, 6, | | 10, 13, | 17,** | 29, 36, 51, |
| 9, 12, | | 16, 41, | 35,*** 38, | 65, 71, 81, |
| 15, 18, | | 44, 54, | 48, 64, 80 | 84, 86 |
| 30, 87 | | 57, 60, | | |
| | | 79 | | |

## Counts Motion for Judgment of Acquittal Granted[3]

| A–Murder | A–Maim | A–Disable | A & Battery | Prop. Destruct. |
|---|---|---|---|---|
| | | 22, 24, | 17,** 25, | 26, 75 |
| | | 27, 34, | 28, 35,*** | |
| | | 37, 47, | 50, 53, | |
| | | 49, 52, | 70, 74, 83 | |
| | | 63, 69, | | |
| | | 73, 82 | | |

---

The lower court sentenced Burgess on December 17, 1990. He appeals to this court, raising the twelve assignments of error that follow.

---

2. A–Murder = Assault with Intent to Murder;
 A–Maim = Assault with Intent to Maim;
 A–Disable = Assault with Intent to Disable;
 A & Battery = Assault and Battery;
 Prop. Destruct. = Malicious Destruction of Property;
 * = Assault only;
 ** = Not guilty on Assault and Motion for Judgment of Acquittal (MJOA) granted as to Battery; and
 *** = Not guilty on Battery and MJOA granted as to Assault.

3. "Count 36, counselors received a copy of my memorandum, I think, on Count 36. The Court did not render judgment as to Count 36. Therefore, the defendant gets the benefit of that at this time and he is not guilty is entered for him at this time."

## I.

Whether the identification evidence with respect to each of the separate incidents was insufficient to find defendant guilty beyond a reasonable doubt.

Appellant Burgess structures his first issue around two main arguments. One, the lower court failed to distinguish between a confession and an admission. Two, the lower court did not have sufficient identification evidence to find Burgess guilty as to each count. We address his concerns.

## A.

On June 2, 1989, troopers White and Wooters went to Burgess's house to interview him "about a rock throwing incident that occurred on the Beltway." After speaking to Burgess for a short time, the troopers asked him to accompany them to the Maryland State Police Barracks in Forestville, Maryland, to continue the interview. Burgess agreed, and went to tell his parents where he was going. Once inside his house, however, Burgess clung to his mother and refused to accompany the troopers. At this time, Burgess's stepfather requested that the troopers vacate the premises and return only if they had a warrant. Troopers White and Wooters and Detective Philbin returned with a warrant around 8:00 p.m. and took Burgess to the Criminal Investigations Division (CID) Headquarters.

At the CID Headquarters in Landover, Maryland, Detective Philbin advised Burgess of his rights. Burgess waived his rights and made a written statement. The crux of that statement is as follows:

> Me, Donnell, and Man was [sic] drinking. We went to the movies in Rivertowne. After the movies we start[ed] playing around and we all were saying ["]let's go to the bridge.["] Then we went and start[ed] throwing rocks on the bridge. Then Donnell got in the street and started throwing rocks at cars. After a little while we all were in the street. Then Man saw 2 people running so we left.

■ Appellant argues that his statements to the police were "admissions and not a confession" because he did not make a direct acknowledgement of guilt with respect to the harm done to any particular person or piece of property. Although he is correct to suggest that there is a distinction between an admission and a confession, he fails to show the harm that flowed from any lack of distinction and he overlooks *State v. Kidd,* 281 Md. 32, 375 A.2d 1105, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977). "[I]t is firmly established that the test for the receipt in evidence against an accused is the same for a confession and an admission." *Id.* 281 Md. at 34 n. 1, 375 A.2d 1105. We now turn to his second contention.

### B.

Burgess suggests that the lower court did not have sufficient identification evidence before it to convict him on the 38 counts. Because the test for admissibility is the same for an admission as it is for a confession, we can look to *Birchead v. State,* 317 Md. 691, 566 A.2d 488 (1989), for the evidentiary guidelines that apply when a confession is involved.

In *Woods v. State, supra,* 315 Md. [591] at 615–16, 556 A.2d 236 [ (1989) ], we observed that evidence to support an extrajudicial confession must be independent of it and relate to and tend to establish the corpus delicti, *i.e.,* the facts necessary to show that a crime has been committed. But the independent evidence, we said, need not be full and complete or establish the truth of the corpus delicti beyond a reasonable doubt or by a preponderance of proof. *Id.* at 616, 556 A.2d 236. It "may be small in amount and is sufficient to establish the corpus delicti 'if when considered in connection with the confession or admission, it satisfies the trier of facts beyond a reasonable doubt that the offense charged was committed and that the accused committed it.'" *Id.,* quoting from *Bradbury v. State,* 233 Md. 421, 424–25, 197 A.2d 126 (1964). And we recognized that the corpus delicti may be proved

by circumstantial evidence, and that the accused's identity or criminal agency is not a necessary element of the corroboration required to make the confession admissible. *Id.*

*Id.* 317 Md. at 706, 566 A.2d 488.

Furthermore, we examine the principles of aiding and abetting because Burgess participated with two of his friends in the rock throwing spree.

> The legal definition of the word 'aider' is not different from its meaning in common parlance. It means one who assists, supports or supplements the efforts of another. The word 'abettor' means in law one who instigates, advises or encourages the commission of a crime. Thus the word 'abet' may import that one is present at the commission of a crime without giving active assistance. To be an aider or abettor it is not essential that there be a prearranged concert of action, although, in the absence of such action, it is essential that one should in some way advocate or encourage the commission of the crime.

*Coleman v. State,* 209 Md. 379, 384–85, 121 A.2d 254 (1955), *aff'd,* 221 Md. 30, 155 A.2d 649 (1959) (citations omitted).

In *Wilson v. State,* 319 Md. 530, 573 A.2d 831 (1990), the Court of Appeals delineated the test for sufficiency of the evidence at the trial court level.

> The test used in determining the sufficiency of the evidence for either court or jury trial is whether the evidence shows directly or supports a rational inference of the facts to be proved, from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged.

*Id.* at 535–36, 573 A.2d 831. Our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *quoted in State v. Rusk,* 289 Md. 230, 240, 424 A.2d 720 (1981).

■ With the *Jackson* test in mind, we now determine whether there was sufficient identification evidence before the lower court on the 38 counts on which it found Burgess guilty.

### 1. *Burgess's admission/confession*

On June 2, 1990, Burgess gave the police a signed statement regarding the rock throwing incident. That admission/confession establishes the following facts. Burgess and his two friends, Petite and Ford (Man), were "hanging out" on Saturday night, May 26, 1989. The appellant wore blue shorts, a white tee-shirt, and a gray Reebok jacket; Petite wore blue jeans, a white tee-shirt, and a waist length, red wool coat; Ford wore dark blue shorts and a white long-sleeve shirt. The youths drank some Cisco[4] and watched a movie at Rivertowne. After the movie, the trio went to Livingston Road where it passes under I–95. The three young men picked up rocks from under the bridge and hurled those rocks at passing motorists. Some of the rocks hit windshields, some hit doors and other parts of the cars, and others presumably missed their intended targets. The youths eventually entered the roadway to launch their projectiles with greater accuracy. For an unspecified time, the trio continued throwing rocks at the unsuspecting motorists who passed by. The gang only abandoned their pursuits when Petite saw two people chasing them. Burgess says he arrived home between 1:30 and 2:00 a.m.

### 2. *Morrison's (Mad Ball's) Testimony*

To corroborate Burgess's statements and to provide additional information, the State called Calvin Morrison (Mad Ball) to the witness stand. Much of what Mad Ball told the court substantiated Burgess's statements. Morrison stated that he saw Burgess and Man around 10:00 to 11:00 p.m. on Saturday. Burgess wore a gray Reebok jacket and some light colored blue jean shorts. Man wore blue, baggy

---

**4.** According to Burgess, Cisco is a type of alcoholic beverage.

shorts and a red jacket. Mad Ball testified that when he saw them that evening, Burgess and Petite were not drunk.[5] Additionally, Morrison told the court that while walking by Livingston Road where it passes underneath the Beltway, on Friday night/Saturday morning, Ford "had picked up a rock and was tossing it in his hand and said, [']let's introduce my Man Mad Ball to the bridge.[']" In response, everyone giggled—including Burgess.[6]

### 3. *Witness identification* [7]

In addition to Burgess's admission/confession and Morrison's testimony, the State produced numerous witnesses who provided the court with sufficient identification of Burgess and his colleagues. The witnesses testified that they saw three black males [8] standing on the side of the road or on the roadway. Many witnesses saw one rock thrower wearing a gray jacket or sweatshirt and another wearing a red jacket. The youths wore blue jeans or dark trousers. Two of the rock throwers were about the same height; the other remaining one was slightly taller. The trio's *modus operandi* varied. Sometimes they would launch rocks from the side of the road. At other times, they would walk shoulder to shoulder and then suddenly turn about and deliver their destructive loads. The youths, seemingly emboldened with their success, would flag cars to slow down and then bombard them. In fact, the gang even entered the roadway to hurl rocks at the unwitting

---

5. He based his opinion on his prior observations of their behavior while they were intoxicated.

6. The group consisted of Morrison, Petite, Burgess, and Ford.

7. We get this summation of identification evidence from the following witnesses: Mr. Palmer; Ms. Eckberg; Mr. Tillery; Mr. Senkel; Mr. Jeffrey; Ms. Thompson; Mr. Baker; Ms. Robinson; Ms. George; Mr. Marbury; Mrs. Bryant; Mr. Bryant; Mr. Woods; Mr. Lee; Mr. Garner; Ms. Johnson; Mr. Torres; and Mr. Roddy.

8. Tillery thought the person he saw was between the ages of 18 and 22. Jeffrey felt the individuals were between the ages of 15 and 20.

motorists. In direct support of Burgess's statement that "Man saw 2 people running so we left," witnesses Jeffrey and Garner stated that they chased the young men up to the edge of a wooded area. To further support those comments, witness Palmer testified that he saw a couple of people chase the youths.

Viewing all of the evidence under the *Jackson* standard, we hold that there was sufficient identification evidence before the lower court to find Burgess guilty on the 38 counts.

## II.

Whether the court below committed constitutional error by denying a continuance of the trial date where defense counsel clearly indicated his lack of preparation to render defendant effective assistance of counsel.

Appellant states that his trial counsel was "woefully inadequately prepared on several critical issues." He complains that his counsel was unprepared to cross-examine the medical experts regarding Ms. Morris's injuries, he did not properly check into a "missing witness," Ms. Miller, concerning the bombardment of Palmer's truck, and that he was not prepared on matters dealing with Cisco [Sisco].[9]

Burgess did not present those arguments before the trial court. Moreover, as the State points out, his contentions relate more toward ineffective assistance of counsel than to lack of trial preparation. Three days after Burgess filed his Motion for Continuance, the court asked if there were any preliminary matters before the trial. Burgess did not raise any issues. In addition, at the beginning of the trial, the court asked both parties if they were prepared—Burgess made no objection.

"Rulings on requests for continuances are within the sound discretion of the judge and will not be disturbed on appeal absent an abuse of that discretion." *Beachem v.*

---

9. *See supra* note 4.

*State*, 71 Md.App. 39, 55, 523 A.2d 1033 (1987). We hold that the trial court did not abuse its discretion by denying Burgess's Motion for Continuance, especially where Burgess, on two separate occasions, made no objection when the court wanted to proceed to trial.

III.

Whether the court below committed reversible error in admitting state of mind evidence regarding a severed co-defendant who was unavailable for cross-examination where such evidence did not constitute adoptive admission.

Late Friday night, Mad Ball, Burgess, Man, and Petite went to a party in Clinton, Maryland. Due to neighbors' complaints about the excessive noise generated by the party, the party was winding down as the youths arrived. Returning to Rivertowne, where the gang met hours earlier, they regrouped and started for their respective homes. Heading towards Livingston Road, on their way home, the youths had to pass under the Beltway. By now it was early Saturday morning, May 26.

Morrison, at trial, recounted what happened next.

Q. And when you [Morrison, Petite, Ford, and Burgess] were walking underneath the Beltway overpass what happened?

A. We was [sic] walking up by the bridge. Maurice had picked up a rock and was tossing it in his hand and said, ["]let's introduce my Man Mad Ball to the bridge.["]

Q. What happened then?

A. Then everybody started giggling and then we just kept walking home.

Q. Was John Burgess giggling?

A. Yes.

Burgess argues that Mad Ball's statements (relating what Ford said) were immaterial and prejudicial. Furthermore, he asserts they do not constitute adoptive admissions and are therefore subject to the confrontation clause of the U.S. Constitution. The State, on the other hand, alleges

that it offered the statements to show their effect on Burgess—he giggled. Both parties are making those arguments for the first time: Burgess did not object when the State offered those statements.[10] Thus, other than the parties' assertions, we have no way of determining why the State presented the evidence. If appellant had objected, the State would have had to produce arguments to support the admission of the evidence. The issue is not preserved. Even if the appellant had objected at trial, the court properly could have overruled the objection. To avoid further litigation we note three evidentiary doctrines that would support the admission of the statements of which Burgess now complains.

First, in *Henry v. State*, 324 Md. 204, 596 A.2d 1024 (1991), the Court of Appeals discussed the issue of adoptive admissions (in the hearsay context). The witness, Ms. Sellers, testified that she was at a motel with the defendant and three of his cohorts.[11] As the group watched television, a story came on about the Landover murders. The men began to jump and dance about the room. Bruce and Dunstrom recounted the group's beastly feats—Henry "was laughing along with them, cheering them on." *Id.* at 241, 596 A.2d 1024.

Favorably citing Professor McLain, the Court reasoned that Henry tacitly adopted Bruce's and Dunstrom's statements.

A party ... may make a "tacit admission," adopting, by his or her silence, another person's statement. In order for the other's statement to be considered the party's tacit admission, the following prerequisites must be satis-

---

**10.** *See* I Md. Rule 4–323(a). Defense counsel, Joyner, did object *before* Morrison stated what happened under the overpass, but he argued that the prejudicial weight of the evidence outweighed its probative value. The court overruled the objection. Absent any objection, the court allowed the statements, provided above, into evidence.

**11.** The defendant, Henry, along with Dunstrom, Bruce, and Eddie murdered five people in the "Landover murders."

fied: (1) the party heard and understood the other person's statement; (2) at the time, the party had an opportunity to respond; (3) under the circumstances, a reasonable person in the party's position, who disagreed with the statement, would have voiced that disagreement. The party must have had first-hand knowledge of the matter addressed in the statement.

6 L. McLain, Maryland Evidence § 801(4).3 at 312–13 (1987) (footnotes omitted). In fact, "Henry even went beyond a tacit admission and by his obvious approval, adopted the statements as his own." *Henry*, 324 Md. at 242, 596 A.2d 1024. Burgess's behavior, in response to Man's comment, is analogous to Henry's behavior. By giggling, Burgess indicated, to all around, that he understood what Man meant when he said, ["]let's introduce my Man Mad Ball to the bridge["]—all the while, tossing a rock in his hand. Consequently, we do not agree with Burgess when he claims that his reaction was not an adoptive admission.

Second, the trial court could have found the statements admissible as non-hearsay.[12]

Many out-of-court utterances fall within such categories as greetings, pleasantries, expressions of gratitude, courtesies, questions, offers, instructions, warnings, exclamations, expressions of joy, annoyance, or other emotion, etc. Such utterances are not intended expressions of fact or opinion. They are not assertions, at least for purposes of the hearsay rule. Thus they are not hearsay.

"Hello."

"How are you?"

"Have a nice day."

"Would you like to have lunch?"

"I hope it doesn't rain tomorrow."

---

**12.** Hearsay is generally defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Thus, when a statement is offered for some purpose other than to prove the truth of the matter asserted therein, it is not hearsay.

"I wonder what he paid for that car."

"Thank you."

"Can you join me for a drink?"

"Don't do that, or else."

"Watch your step."

None of the above utterances is an intended expressions [sic] of fact or opinion. None is hearsay.

D. Binder, Hearsay Handbook 18 (3rd ed. 1991).

■ Lastly, the trial court could have overruled any possible hearsay objection on the ground that the statement was not offered for the truth of the matter, but for its effect on the listener. In *Brown v. State,* 80 Md.App. 187, 194, 560 A.2d 605 (1989), this court held that evidence offered to show its effect on the hearer's mind, rather than the truth of the matter asserted, was not hearsay. *See* L. McLain, *supra,* § 801.9 at 280–82. Thus, had the issue been preserved, we would hold that the lower court did not err by admitting the statements into evidence.

## IV.

Whether the court below improperly limited the defense cross examination of Calvin Morrison.

At some point, Mad Ball and Burgess were friends. Nevertheless, during the trial, Mad Ball took the witness stand for the prosecution. Because Mad Ball testified against him, Burgess appears to maintain that Mad Ball was trying to "curry favor" with the prosecution.

■ Burgess asks us to hold that the lower court improperly limited his cross examination of Morrison. *See Deinhardt v. State,* 29 Md.App. 391, 398, 348 A.2d 286 (1975), *cert. denied,* 277 Md. 736 (1976).[13] Unfortunately, Burgess

---

*Ali v. State,* 314 Md. 295, 304, 550 A.2d 925 (1988) (footnote omitted).

**13.** "[T]he refusal to allow the defense to demonstrate bias on the part of the prosecutor's principal witness through cross-examination is a denial of Due Process under the Fourteenth Amendment as well as an infringement upon Davis's [the defendant's] Sixth Amendment rights." *Deinhardt* 29 Md.App. at 397, 348 A.2d 286.

does not specify the particular areas to which he was restricted.

▉ Our review of the record reveals that the lower court allowed Burgess to inquire about Morrison's relationship with the police. The court did, however, limit Burgess when he tried to impeach Morrison by prior convictions. Smathers, Assistant State's Attorney for Prince George's County, Maryland, represented to the court that the District of Columbia nol prossed a felony narcotics charge it had filed against Mad Ball. Maryland has a rule addressing proof of interest or conviction of an infamous crime.

> Evidence is admissible to prove the interest of a witness in any proceeding, or the fact of his conviction of an infamous crime. Evidence of conviction is not admissible if an appeal is pending, or the time for an appeal has not expired, or the conviction has been reversed, and there has been no retrial or reconviction.

Md.Cts. & Jud.Proc.Code Ann. § 10–905(a) (1989). For purposes of this appeal, section 10–905(a) requires a conviction. A *nolle prosequi* is not a conviction. *See Curley v. State,* 299 Md. 449, 474 A.2d 502 (1984). Consequently, because a nol prossed charge is *not* a conviction, Burgess could not properly impeach Morrison on the District of Columbia felony charge. Therefore, the lower court did not improperly limit appellant's crossexamination of Morrison.

## V.

Whether in the absence of a factual finding on the value of the property, defendant was improperly convicted in Count 62 of destruction of property of a value of greater than $300.

▉ Mrs. Bryant, who was driving her car in the early morning hours of Sunday, May 27, 1989, testified that a dark-skinned "guy" wearing blue jeans and a red jacket (and apparently taller than his cohorts) "ran out in front of my car, and he put his hand back and threw this big

boulder." The "big boulder" caused about $1000 damage to her car.

Appellant argues that the trial court did not determine whether Bryant's car was worth more than $300. Looking at the verdict sheet, we see that the lower court wrote beside count 62 [14]—"more than $300."

"The District Court or a circuit court sitting without a jury shall render a verdict upon the facts and the law. *Although not required, the court may state the grounds for its decision either in open court or by written memorandum.*" I Md. Rule 4–328 (emphasis added). *See West v. State*, 312 Md. 197, 213, 539 A.2d 231 (1988). In the instant case, the trial court had evidence before it to support the verdict. Bryant testified that a rock smashed her window and that the total damage to her vehicle was about $1000. Hence, we hold that the trial court did not err when it convicted Burgess on count 62.

## VI.

Whether the court below committed constitutional error in permitting a variance in the proof at trial with respect to Count 90.

Count 90 [15] alleged that Burgess destroyed (partially) Ms. Scott's car. At trial, Ms. Moody, a passenger in the vehicle, indicated that the automobile belonged to her father, Mr. Moody. Recognizing a potential defect, the State moved to amend the count to reflect Mr. Moody as the vehicle's owner, but the court denied the motion and sustained Burgess's objection. Later, the State argued that the change in the owner's name did not change the character of the offense. Subsequently, the court convicted Burgess on count 90. He contends that was an error.

---

**14.** Count 62 charged Mr. Burgess with Malicious Destruction of Property.

**15.** Count 90 charged Mr. Burgess with Malicious Destruction of Property.

██ In the instant case, the name of the original property owner was incorrect: "being the property of Gloria Scott. . . ." But as the trial judge noted, proof of ownership is not a material element of the crime of "Malicious Destruction of Property." Md.Ann.Code art. 27, § 111 (1987 repl. vol.). Proof that the subject property is that of "another" is all that is required. *See McLaughlin v. State*, 3 Md.App. 515, 240 A.2d 298 (1967). The charging document alleged that the vehicle was the property of "another" and the evidence was sufficient to establish that the property was that of "another." There was no material variance.

## VII.

Whether the court below committed reversible error when it considered facts outside of the record in these proceedings in finding appellant's statement to be voluntary.

At trial, Detective Philbin testified that he advised Burgess of his constitutional rights before Detective Philbin questioned him about the rock hurling incident. *See supra* text at 529.[16] Burgess waived his rights and gave a statement. The record does not reflect that Burgess's admission/confession was involuntary.

Trooper Michael White testified that neither he nor his partner, Trooper John Wooters, made any threats, promises, or inducements to Burgess when they first went to his house and later when they arrested him.

Q. During the time that you [Trooper White] saw John Burgess either in the morning or after you got an arrest warrant for him, did you make any threats, promises, or inducements to Mr. Burgess designed to get him to make a statements [sic] to you?

A. No, sir.

---

**16.** Detective Philbin inquired about Burgess's educational level to determine whether Burgess could understand the forms involved in the questioning. Burgess stated that he had completed the 11th grade and that he could read and write.

In his admission/confession, Burgess indicated that no one induced him or promised him anything to make his statement; no one threatened, intimidated, or forced him to make the statement; and that he made his statement freely and voluntarily. In addition, his counsel admitted that Burgess made the admission: (1) "Now he did make a statement as Mr. Smathers pointed out...."; and (2) "Now, he admits to throwing some rocks but that admission must be corroborated as to each count for which he might be found guilty for each count."

When delivering its verdict, the trial court discussed Burgess's admission/confession.

> Having said that, let's start firstly with the defendant's statement in this case. The defense has wanted the court to feel that the defendant firstly would not have given a statement to the police officers in this case because the stepfather had told him not to.[17]
>
> The detective who took this statement is one that the Court has known for a long time, Detective Lynn Philbin. He has appeared before the Court numerous times and I have never found him to be a person who would stretch the truth to help or aid his cause and he takes no personal interest in cases. So, therefore, I find what Detective Philbin said that the defendant had knowingly, intelligently, voluntarily waived his right to have an attorney present and that he had indeed agreed to talk to him freely and voluntarily. The Court find[s] this statement was freely and voluntarily made.

The court made those remarks *after* closing arguments. Burgess did *not* object to the comments. Therefore, any issue springing from those comments is not preserved. *Dresbach v. State*, 228 Md. 451, 452–53, 180 A.2d 299 (1962). Had the issue been preserved, appellant's present arguments would still be unavailing for the reasons that follow.

---

17. Q. Did you give your son any advice at all?
A. Yeah. I told him don't say nothing [sic] to the police until I come there with a lawyer.

Burgess argues that the lower court considered facts outside of the record when it determined that he voluntarily made his admission/confession. This argument breaks down into two parts and one sub-part: (A) the court's consideration of facts not before it; (1) whether Burgess voluntarily made his admission/confession; and (B) the impartiality of the trial court.

### A.

In *Turman v. United States,* 555 A.2d 1037 (D.C.Cir. 1989), the Court of Appeals for the District of Columbia faced an issue almost identical to the one before us. In that case, Officer Jones, a member of the Morals Division of the Metropolitan Police Department, was working undercover as a prostitute. She arrested the appellants because one of them requested her to engage in sexual acts for money. During the trial, in response to the appellants' Motion for Judgment of Acquittal, the lower court stated:

[Counsel] ... Officer ... Jones has testified before me in this type of case several times just as she has probably testified before all our judges in this court several, several times, and *she's the most credible and most reliable witness in all the cases that she has ever testified in before me.*

Later, in response to the defendants' renewed motion for judgment of acquittal, the trial court stated:

Officer ... *Jones has testified before me several times as a person of great credibility and, indeed, she is,* and the testimony in this court by [appellants] corroborates the fact that indeed she is a person of great credibility, because to a very, very large measure each of them corroborated her testimony.... So it is clear ... that they corroborate substantially the testimony of Officer Jones. And so indeed the court believes her....

*Turman,* 555 A.2d at 1038 (emphasis added).

The appellate court reversed the appellants' convictions because the lower court relied on facts presented to it in

previous trials, and because the lower court did not assure the parties that its "previous assessment[s] would play no role in judging the pending case," thereby creating an appearance of partiality "which tainted the trial process." *Id.* at 1039.

Maryland common law offers two cases that are instructive. In *Trusty v. State,* 67 Md.App. 620, 508 A.2d 1018, *aff'd in part, rev'd in part,* 308 Md. 658, 521 A.2d 749 (1987), we stated "the law [is] clear that a trial judge cannot apply the knowledge personally gained from one case to the quantum of evidence presented in a later case." *Id.* 67 Md.App. at 626, 508 A.2d 1018. The trial court, in *Trusty,* had unwittingly taken judicial notice of "the experience and expertise of [a] police officer, the reputation of [a] neighborhood, and the component facts of a drug transaction." *Id.* at 625–26, 508 A.2d 1018. The State presented *practically no* evidence to indicate that the arresting officer had any experience with narcotics investigations, yet the trial court found probable cause—in effect, taking judicial notice that the officer was experienced. Therefore, we held that the evidence before the trial court was quite insufficient to find probable cause.

In *Coomes v. State,* 74 Md.App. 377, 537 A.2d 1208, *cert. denied,* 313 Md. 8, 542 A.2d 845 (1988), we faced a situation similar to that in *Trusty.* "Our review of the record reveal[ed] that there was *no* evidence produced from which the court could have concluded that the seizing officers, by reason of their training and experience, had probable cause to believe that the items seized were marijuana and paraphernalia." *Id.* 74 Md.App. at 389, 537 A.2d 1208 (emphasis added). Accordingly, we stated that a "trial judge may not take judicial notice of the experience and expertise of a police officer and, *from that,* find probable cause for the seizure of evidence." *Id.* (emphasis added).

 "When a case is tried by the court, as was the one *sub judice,* the judgment of the trial court on the evidence will not be set aside unless clearly erroneous; and we

accord great weight to the court's determination regarding credibility." *Comstock v. State,* 82 Md.App. 744, 757, 573 A.2d 117 (1990). Yet, that determination is bounded by the evidence before the court. Under the principles enunciated in *Trusty* and *Coomes,* the lower court should not have commented on Detective Philbin's reputation for veracity, absent evidentiary support. We now examine that comment to see if it warrants reversal.

### 1.

 The instant case is different from *Trusty* and *Coomes.* In those cases, the lower courts had either no evidence (*Coomes*) or an insufficient amount (*Trusty*) before them to determine whether the officers in question had the knowledge and training necessary to make a probable cause determination. Thus, the lower courts' judicial notice of the respective officers' expertise had no independent support in the record.

The State's burden "to establish affirmatively the admissibility of the confession or admission arises upon proper objection." *State v. Kidd,* 281 Md. 32, 38, 375 A.2d 1105, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977). Burgess never indicated, at trial, that he did not voluntarily make his admission/confession. On a pre-trial Motion to Suppress, the court must determine, by a preponderance of the evidence, that the admission/confession was voluntarily made. *Id.* Then, the trier of fact [here, the court] must find, beyond a reasonable doubt, that the defendant voluntarily made the statement. *Id.* In the present case, ignoring Detective Philbin's testimony,[18] we note three sources of information to buttress the State's position that Burgess freely and voluntarily made his admission/confession: (1) Trooper Michael White's testimony; (2) Burgess's signature on the waiver of rights section of the form that

---

**18.** Q. Did you make any threats, promises, or inducements designed in any way to get Mr. Burgess to make this statement?

A. No, sir, I did not.

he completed; and perhaps the most damaging detail against his argument (3) his counsel's concession that Burgess made the admission/confession. *See supra* text at 541–542.

The evidence regarding the voluntary nature of Burgess's admission/confession is *uncontradicted.* Therefore, even ignoring Detective Philbin's testimony, we can easily distinguish the instant case from *Trusty* and *Coomes* because there was an abundance of other evidence, whereby a rational trier of fact could have found, beyond a reasonable doubt, that Burgess voluntarily made his admission/confession. *Hillard v. State,* 286 Md. 145, 151, 406 A.2d 415 (1979).

### B.

Implicit in appellant's argument is the issue of the impartiality of the trial court. He did not raise that issue at trial either. Thus, the issue is not preserved. Our examination of the record satisfies us that the court was not partial toward the State. In fact, any potential error caused by the trial court's statements was cured by evidence other than Detective Philbin's testimony (and lack of evidence about the involuntariness of the statement), which indicates that Burgess voluntarily made his admission/confession.[19]

"[S]o long as a judge remains open-minded enough to refrain from finally deciding a case until all of the evidence has been presented, remarks made by the judge during the course of the proceedings will not be considered as indicative of disqualifying bias or prejudice." J. Shalman, S. Lubet, & J. Alfini, Judicial Conduct and Ethics

---

**19.** Appellant's admission rendered harmless any error caused by the remarks of the trial court. *Daniels v. State,* 213 Md. 90, 106, 131 A.2d 267 (1957). In the instant case, Burgess's counsel admitted that Burgess made the admission/confession. Moreover, when the State offered the admission/confession into evidence, Burgess did not object to it on the ground that he did not make it voluntarily.

§ 5.07 at 107 (1990). But, "when a judge's remarks are so extreme that they show that his ... decision has been predetermined, improper bias or prejudice will be found to exist." *Id.* at 108 (footnote omitted). The latter comment does not apply to the trial court. The court made its comments about Detective Philbin *after* all of the evidence and both parties' closing arguments. The court's decision was not predetermined in any way.[20] Moreover, the record reflects three alternative grounds to support the State's contention that Burgess voluntarily made his admission/confession. The only evidence Burgess produced that would suggest he did not voluntarily make his admission/confession is the advice his stepfather gave him.

Q. Did you give your son any advice at all?

A. Yeah. I told him don't say nothing [sic] to the police until I come there with a lawyer.

Burgess did not present this argument before the trial court. He does not present it now. Thus, the State's evidence was not contested when it introduced Burgess's admission/confession.

In *Boyd v. State,* we noted that "[w]hether recusal is appropriate depends upon what the trier of fact knows when the trial begins, not when it ends. A review on appeal necessarily includes scrutiny of the entire proceeding in order that the reviewing court can determine whether bias or prejudice is shown."[21] *Boyd,* 79 Md.App. 53, 65, 555

---

**20.** For example, the court considered the credibility of Mr. Johnson, Burgess's stepfather, regarding the time of the barrage. The court chose to believe the other witnesses who stated that the events occurred "a little before 2 and a little after 2:30 [a.m.]...."

**21.** In the federal system, the courts apply a "special harmless error test." *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). They use this test because the "traditional harmless error rule ... presumes the existence of an impartial judge." *Scott v. United States,* 559 A.2d 745, 750 (D.C.App. 1989). The United States Supreme Court delineated the standard as follows:

We conclude that in determining whether a judgment should be vacated for a violation of § 455(a) [federal recusal guideline], it is

A.2d 535 (1989), *aff'd,* 321 Md. 69, 581 A.2d 1 (1990). Our review of the record convinces us that the lower court was not biased or prejudiced against Burgess. *See* II Md. Rule 1231 (guidelines for recusal).

 We are aware that trial judges will have many witnesses come through their courtrooms. Some of those witnesses will be frequent visitors. This raises a dilemma for the trial court: should the court have to recuse itself when dealing with a well-known witness? The answer is yes and no.

> There is nothing inherently improper about a judge deciding the credibility of a witness who has previously appeared before that judge—an event that occurs with some frequency in the Superior Court. But just as a jury may only decide a case based on the facts properly presented to it during trial, ... so too must a judge, sitting as the trier-of-fact, base his or her determinations solely on the evidence presented in the case at bar.

*Turman,* 555 A.2d at 1038. To prevent any possible error, the trial court may inform the parties about its prior judicial experience with the witness. But the court should make it clear to the parties involved that its previous assessment of the witness will play no role in judging that witness's

---

appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

*Liljeberg,* 486 U.S. at 864, 108 S.Ct. at 2204.

In the case *sub judice,* the risk of injustice to the appellant is minuscule. In fact, he never raises the issue that the trial court should have recused itself or that the court was biased. The balance favors upholding the judgment. The appellant did not contradict the State's evidence that he voluntarily made his admission/confession. Moreover, there are three alternative sources of information, apart from Detective Philbin's testimony, to support the State's claim that Mr. Burgess voluntarily made his admission/confession. There is no risk that injustice will be done in other cases—the appellant never even suggested (or suggests now) that the court recuse itself. Lastly, there is no risk that the public's confidence will be undermined. Our examination of the record indicates that the trial court conducted a fair trial.

credibility in the case at bar. *See id.* at 1039. In those rare and exceptional cases where the judge concludes that he or she would be swayed by his or her *a priori* assessment of the witness's credibility as to be unable to decide the case fairly, the judge should step aside. For it is a fundamental principle "that a judge shall not preside in any case unless he is disinterested and impartial." *Costello v. State,* 237 Md. 464, 473, 206 A.2d 812 (1965).

## VIII.

Whether the court below committed error when it failed to investigate a violation of the exclusion order.

At trial, the lower court asked the witnesses scheduled to testify to step outside of the courtroom until their turn came to testify.[22]

THE COURT: Rule on witnesses has been imposed in this case. All witnesses scheduled to testify in this case must go outside, remain outside. You're not allowed to discuss your testimony with anyone else or with each other. Each party should be responsible for seeing that his witnesses leave the courtroom.

All right. Is the State satisfied that his witnesses have left?

MR. SMATHERS: Yes, Your Honor.

THE COURT: Defense satisfied.

MR. JOYNER: Yes, Your Honor.

THE COURT: All right. Thank you.

Later on during the trial, the State mentioned to the court that there might be State's witnesses in the courtroom.

MR. SMATHERS: Some people have watched in the courtroom and may be State's witnesses in this case.

---

**22.** The Maryland Rules provide that on motion or its own initiative the court can exclude a witness from the courtroom. I Md.Rule 4–321. "The purpose of the rule ... is to prevent a prospective witness from being taught or prompted by the testimony of another." *Brown v. State,* 272 Md. 450, 477, 325 A.2d 557 (1974).

THE COURT: You think some of them are your witnesses?

MR. SMATHERS: They may be.

THE COURT: If there are any State witnesses or defense witnesses in the courtroom who have not testified and not been excused from the case, you must go outside and remain outside. You cannot discuss your testimony with anyone else. Each party shall be responsible for seeing that his witnesses leave the courtroom.

MR. SMATHERS: Thank you, Your Honor. Your Honor, the State calls Patricia Jones.

■ Burgess maintains that the lower court erred by not investigating a *possible* violation of the court's Exclusion Order. We use the word "possible" because the record does not reflect whether there were any witnesses in the courtroom. Neither the State nor Burgess noted for the record that anyone left the courtroom. Thus, we have no practical way of determining whether the court should have made an investigation. "When ... the trial court was notified of an apparent violation by the witness of the order of sequestration, it was then incumbent upon the trial judge to make an investigation pursuant to the discretionary power vested as to the imposition of any sanction." *Brown*, 272 Md. at 478, 325 A.2d 557.

■ Therefore, because Burgess did not object and failed to point out that there were any witnesses who under the rule should not have been in the courtroom at the time, we hold that he waived any possible error on this issue.

## IX.

Whether the court below erred in permitting Destiny Morris to testify.

■ The State called Ms. Destiny Morris to the stand. Morris was riding in Palmer's truck when the appellant and his cohorts heaved rocks at the vehicle. At least one rock crashed through the front windshield and struck Morris on the head. At the time, Morris, along with her friends, was

returning home from Ocean City, Maryland. She was asleep, resting her head on the truck's dashboard. Morris never knew what struck her and went into a coma shortly thereafter. At trial, Morris, who had just graduated from the tenth grade, functioned at the third grade level.

 The court apparently wanted to determine whether Morris was competent to testify.

THE COURT: And you [Mr. Joyner] have nothing to do with the remaining cases here and I put that on the record clearly, *but the Court's going to use this opportunity to find out about this confabulation because it could very well effect whether or not she testifies at all down the line.* There is no jury here.

MR. JOYNER: I understand.

THE COURT: I can separate that out.

MR. JOYNER: I understand. Thank you.

"When a substantial question is presented concerning the competency of a witness, the trial judge should ordinarily conduct a voir dire examination of the witness out of the presence of the jury." *Evans v. State,* 304 Md. 487, 508, 499 A.2d 1261 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 722 (1986), *motion for reconsideration denied,* 305 Md. 306, 503 A.2d 1326 (1986). "[T]he decision as to the competency of a witness is within the sound discretion of the trial court but the court must at least conduct such an examination as will disclose the factual basis on which his conclusion as to competency rests." *Brandau v. Webster,* 39 Md.App. 99, 105–06, 382 A.2d 1103 (1978).

Burgess does not suggest that Morris's testimony was prejudicial or harmful to him. Morris remembered nothing of the incident or her attackers on that fateful morning. In fact, she did not even recall going to the beach, let alone returning from it. The content of her testimony was neither harmful nor prejudicial to Burgess. To the extent that the manner in which she presented herself and testified might have been damaging to Burgess, the trial judge made

it clear that sympathy would play no part in his decision.[23] *See State v. Babb*, 258 Md. 547, 550, 267 A.2d 190 (1970). Accordingly, we hold that the trial court did not abuse its discretion by determining whether Morris was a competent witness.

Assuming, arguendo, that the lower court erred, we look to *Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976).

We conclude that when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

*Dorsey*, 276 Md. at 659, 350 A.2d 665 (footnote omitted). Scrutinizing Ms. Morris's testimony, we find nothing prejudicial or harmful to Burgess. Thus, under *Dorsey*, we hold that the trial court's decision to allow Morris to take the stand was beyond a reasonable doubt, harmless error, if it was error at all.

## X.

Whether on the record before us, the trial counsel was ineffective in his representation of appellant Burgess.

---

**23.** MR. JOYNER: I don't see the point of this. It's completely show boat time and this is sympathy and I would object to this. Even with only a court trial I would object.
THE COURT: Mr. Joyner, believe me I can look through sympathy....

. . .

THE COURT: Mr. Joyner, listen to me, sir.
MR. JOYNER: Yes, sir.
THE COURT: I understand that you're representing your client. Your client is going to get a fair trial.

 Appellant informs us that "there are some glaring deficiencies in the performance of [his] Trial Counsel...." Yet, he does not request this court to issue any remedy in his favor. Even if he had requested a remedy, we could not aid him. His proper form of action is to follow the Post Conviction Procedure Act. See I Md. Rule 4–401–408. The Court of Appeals has "consistently held that the desirable procedure for determining claims of inadequate assistance of counsel when the issue was not presented to the trial court, is by way of the Post Conviction Procedure Act." *Stewart v. State*, 319 Md. 81, 92, 570 A.2d 1229 (1990).

## XI.

Whether the court below improperly imposed a double punishment for a single offense when it sentenced defendant for assault with intent to maim and assault with intent to disable.

Burgess uses a "shotgun" approach to argue that the lower court convicted him for "assault with intent to maim, assault with intent to disable[,] and assault and battery with respect to the same person...." Out of 90 counts, he does not direct us to a single count that the lower court should have merged. After studying the counts on which the lower court convicted Burgess, we conclude that the lower court merged the counts that would have subjected Burgess to multiple punishment.

> The normal test for determining whether one offense merges into another is the so-called "same evidence test" or "required evidence test" or, as it is often labeled, the "*Blockburger* test." This test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter.

*State v. Jenkins*, 307 Md. 501, 517, 515 A.2d 465 (1986).

### Counts Merged[24]

| Victim | A–Maim | A–Disable | Assault | A & B | Sentenced On |
|---|---|---|---|---|---|
| Ms. Morris | 2 | 3 | | 4 | 2 & 4 merged into 3 |
| Mr. Palmer | | 7 | | 8 | 8 merged into 7 |
| Mr. Marbury | | 19 | | 20 | 20 merged into 19 |
| Ms. Thompson | | 31 | 32 | | 32 merged into 31 |
| Mr. Woods | | 66 | | 67 | 67 merged into 66 |
| Mr. Senkel | | 76 | | 77 | 77 merged into 76 |
| Ms. Moody | | 88 | | 89 | 89 merged into 88 |

Additionally, Burgess argues that the lower court sentenced him for both assault and battery. We find no merit in that argument. "A battery is a completed assault and where completed, the use of the word 'assault' is superfluous." *Campbell v. State,* 65 Md.App. 498, 503 n. 1, 501 A.2d 111 (1985), *cert. denied,* 305 Md. 599, 505 A.2d 856 (1986).

### XII.

Whether the court below improperly considered race in sentencing appellant.

 At sentencing, the trial judge said:

Looking at your background, I would not consider you to be one of the young black males who the media is always talking about as part of the generation that is trying to kill itself off, and I'm sure your mom is happy that you were not out there and involved with that, but then I tried

---

**24.** Victim = Victim's name;
A–Maim = Assault with Intent to Maim;
A–Disable = Assault with Intent to Disable;
Assault = Assault;
A & B = Assault and Battery; and
Sentenced On = Counts that the court merged.

to figure out why you got involved with this type of event.

Appellant argues that the lower court did *not* sentence him "as a[n] individual and gratuitous comparisons of [a]ppellant to other young black males were unseemly and violate the Constitutional Guarantee of Equal Protection under the law." We do not agree with Burgess's characterizations.

 The "imposition of sentence in a criminal case is a matter within the discretion of the judge." *Kaylor v. State*, 285 Md. 66, 69, 400 A.2d 419 (1979). "The restraints on a judge's power to impose sentence are, generally, that the sentence not constitute cruel and unusual punishment, that the sentencing judge not be motivated by ill-will, prejudice or other improper considerations and, that the sentence fall within statutory limits." *Id.*

We concur with appellant Burgess that the lower court *considered* his race—but we do not agree that this consideration was improper. As the State points out, "the court distinguished Burgess from those described in the media as young black troublemakers." Therefore, we hold that the lower court did not improperly consider Burgess's race when that court sentenced him.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.