653 A.2d 526

**Eugene SMITH,**

v.

**STATE of Maryland.**

**No. 787, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Feb. 9, 1995.

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty., for Baltimore County of Towson, on the brief), for appellee.

Submitted before WENNER, CATHELL and MURPHY, JJ.

CATHELL, Judge.

Appellant, Eugene Smith, was convicted in a bench trial in the Circuit Court for Baltimore County of theft of goods of the value of $300 or more. He was sentenced to a term of three years incarceration. He presents only one question on appeal:

Did the court below err in refusing to postpone the case by: (a) improperly finding that appellant had waived counsel by inaction, and (b) improperly failing to allow appellant to explain a second reason for requesting a postponement and/or improperly failing to make any determination on the point whether there was a critical witness for the defense who was not present but whom the appellant could have produced with the court's assistance if granted a brief postponement?

### The Facts of the Offense

We provide here relevant portions of the facts as contained in appellant's brief:

[T]he State's only witness, Kenneth D. Bradley, took the stand and testified that he was a "loss prevention agent" at the Hecht Company, located on Security Boulevard in Baltimore County. The following occurred at about 8:55 p.m. on January 14, 1994, as Bradley was watching the store:

On CC TV we observed a ... female go into the store through the west entrance. She went straight to a rack of Milano sport running suits, picked up fifteen of them and then proceeded out the exit. At that time I left the security office, which is on the end of the store, ran around the perimeter of the store and I caught up with the female. At that time she saw me, she attempted to throw the warm-up suits into the truck which had its shell door, it was a small truck with a shell over the bed, the shell door was open. She attempted to throw it in there, missed, and jumped in the cab and yelling, "We are in trouble." And the car attempted to back up and then leave its space. Mall security had seen me in pursuit, they followed me, and we were able to get the truck

behind the defendant's automobile and block its path. The mall security agent jumped out of the vehicle with his gun and ordered the defendant to exit the vehicle, which he did. The female exited from the passenger side where she attempted to flee. I was able to catch up to her and place her under arrest.

The name of the "... female" in question was either Fatima Ferguson or Katisha Ferguson. On being interrogated by Bradley, about 15 minutes after her arrest, Ferguson said that appellant "didn't have any knowledge of" the theft.

For the defense, appellant's brother, Maverick Smith, testified that on the evening in question, he and appellant drove to the Security Mall to pick up their older sister, Patricia Smith, who worked at J.C. Penney's. (The woman, Ms. Ferguson, was not with them, and Maverick did not know her.) Maverick got out of the truck to go get Patricia, and when he came back, he found out that appellant had been arrested.

On being told that "the girl with [appellant] stole something," Maverick informed the authorities that they had had no "girl" with them. Maverick added that the latch on the back door of appellant's truck was defective, and "wouldn't ever lock."

### The Procedural Facts Relating to the Request for, and Denial of, Appellant's Request for a Continuance

The record reveals that appellant was arrested on the 14th day of January, 1994. On the 15th of January, 1994, he had an initial appearance before Commissioner Eugene Marshall. At that time, appellant was informed of the nature of the charge against him and the maximum allowable penalty upon conviction. He was then required to read the Notice of Advice of Right to Counsel. That notice, in pertinent part, related:

3. You have the right to have a lawyer.

4. A lawyer can be helpful to you by:

(A) explaining the charges against you;

(B) telling you the possible penalties;

(C) helping you at trial;

(D) helping you protect your constitutional rights; and

(E) helping you to get a fair penalty if convicted.

5. Even if you plan to plead guilty, a lawyer can be helpful.

*E.S.* 6. If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you. The court clerk will tell you how to contact the Public Defender.

*E.S.* 7. If you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible.

*E.S.* 8. **DO NOT WAIT UNTIL THE DATE OF YOUR TRIAL TO GET A LAWYER.** If you do not have a lawyer before the trial date, you may have to go to trial without one.

In addition to initialing that he received advice as to his right to an attorney, he acknowledged receipt of those rights by executing a "Receipt," which provided:

## RECEIPT

I have read or have had read to me the contents of the above notice and acknowledge receipt of a copy thereof.

| 1/15/94 | /s/ Eugene Smith |
|---------|------------------|
| Date | Signature of Defendant |

| 1/15/94 | /s/ Eugene J. Marshall 8-045 |
|---------|------------------------------|
| Date | Judge/Commissioner |

Appellant, at the same time, executed another receipt, acknowledging that he had read the Initial Appearance Report as well as the Notice of Advice or Right to Counsel form. That Initial Appearance Report contained the Commissioner's certification that he had required, *inter alia,* that appellant "read the Notice of Advice or Right to Counsel" and then advised "Defendant that if he appears for trial without a lawyer, the court could determine that he has waived counsel

and proceed to trial with defendant unrepresented by a lawyer."

Appellant was then afforded a bail review hearing before Judge Seidler of the District Court on January 17, 1994. The record forwarded to us indicates that Judge Seidler also advised appellant of his right to counsel:

## BAIL REVIEW SUMMARY

Your bail review was held by Judge I. MARSHALL SEIDLER on 01/17/94.

THE COURT, ON THE DATE SHOWN ABOVE,

Made certain you received a copy of the charging document;

Informed you of right to, and importance of, counsel;

*Referred you to the public defender;*

Advised you of your right to jury trial.... [Emphasis added.]

The court's status report, dated January 17, 1994, also indicates that appellant received advice as to his right to counsel and was again advised to seek the services of the public defender:

THE COURT ON THE DATE SHOWN
BELOW—

___ Bail Review Postponed

_X_ Made certain the defendant received a copy of the charging document

_X_ Informed the defendant of right to, and importance of, counsel

___ Complied w/Rule 4-215

_X_ Referred defendant to public defender

___ Advised felony defendant of right to preliminary hearing

___ Defendant requested preliminary hearing at this time

_X_ Advised defendant of right to jury trial

The District Court's pre-trial docket also indicates that the defendant, appearing without counsel, had been informed of the importance of counsel and "that making next appearance without counsel could be a waiver." During this period, his trial date was scheduled for March 4, 1994. Thereafter, on March 4, 1994, he requested a postponement and, when it was

denied, prayed a jury trial, thereby divesting the District Court of jurisdiction to try him.

Following the earlier January 17, 1994 proceedings in the District Court but prior to the March 4th prayer for a jury trial, appellant, by February 23, 1994, had requested that the public defender represent him. This request was declined because appellant had filed it within ten working days of trial and, thus, had failed to comply with an in-house requirement of the public defender's office.[1] This is evidenced by a letter from the public defender's office that provides, in pertinent part:

> (x) You have applied to [sic] late to be represented by the Public Defender's Office. Our office requires that you apply at least *10 working days prior to your trial date*. If you are able to get your case postponed by the Court, you may re-apply for the services of the Public Defender.
>
> . . . .
>
> If you have any questions, you may contact me at 321–3727.
>
> Sincerely,
>
> /s/Patricia E. Collins
>
> Patricia E. Collins
>
> Intake Supervisor [ ]
>
> *NOTE: YOU MUST TAKE THIS LETTER WITH YOU TO COURT ON THE DAY OF TRIAL.*
>
> *DISTRICT COURT CASES:* District Court Attorneys may be reached by phone at 321–3796 or 321–3874 Monday thru Friday between the hours of 9:00 am and 4:00 pm. However, specific telephone hours are every Friday between 9:00 am—11:00 am and 2:00 pm—4:00 pm.

On March 7, 1994, Judge Howe, the properly designated administrative judge, heard appellant's request for a postponement. The record before us indicates the following:

---

1. The request was made at least eight days, if not more, before the trial date, but was in fact ten days or more before the ultimate trial date of March 7th.

THE COURT: Why are you asking for a postponement?

THE DEFENDANT: Two reasons. Uhm, one of them is that, uhm, I miscalculated the time that it took me to obtain an attorney. It was, I was hoping to afford one and things got in the way. I had accident and I was going back and forth to the treatments, so it got away from me. And by the time that I went to, to apply for a Public Defender, it was too late. So the lady, she gave me, a, a letter to bring to the Court to show that I did attempt to ask for a Public Defender. And, uhm, secondly, I like—

THE COURT: All right. You had a bail review by Judge Seidler on January 17th, 1994, is that right, had a bail review?

THE DEFENDANT: Bail review.

THE COURT: Yes.

. . . .

THE COURT: In District Court, and Judge Seidler told you it was very important for you to get a lawyer; did he not?

THE DEFENDANT: Yes, he did explain to me to get a lawyer.

. . . .

THE COURT: What did you do between January 17th and—

THE DEFENDANT: Okay. I was still—

THE COURT: —today?

THE DEFENDANT: —I was, I was all right, I was, all during the week, I was, I was due to report to the doctor's for treatment.

THE COURT: Right.

THE DEFENDANT: I was in the car accident, right—

THE COURT: I heard you when you said that.

THE DEFENDANT: —January the 7th.

THE COURT: How many times did you go to the Public Defender's Office between January the 17th and March 4th when you were in the District Court?

THE DEFENDANT: Well, I successfully got there one time.

. . . .

THE COURT: Mr. Smith, listen to me. What was the first day that you actually presented yourself to the Public Defender's Office in Baltimore County, Maryland, in Towson?

. . . .

THE COURT: Okay. So you went there, apparently, on February 23rd of 1994?

. . . .

THE COURT: Record does reflect in, in the court file, Case 93–CR–2404. The Defendant's request for postponement is denied. Has not found a good reason for me to postpone his case.

THE COURT: Yes.

THE COURT: He's waived his attorney by inaction.

THE DEFENDANT: Well, may I, may I state—

THE COURT: You're going to go to trial today, sir[?]

THE DEFENDANT: But I, could I say something, though, your Honor?

THE COURT: What do you want to say?

THE DEFENDANT: Well, I have a witness. Matter fact, I have two witnesses. But I have a witness that I can, that could, that could definitely clarify that I, I didn't have anything to do with this particular crime.

THE COURT: Right. Did you bring that particular witness with you today?

UNIDENTIFIED MAN: Yes.

THE DEFENDANT: One.

THE COURT: Well, that's fine. You're going to have a trial today and you go forward with—Mr. Kroll, where'd this case come from?

Subsequently, when appellant appeared for trial before Judge Cahill, as relevant to the issue presented to us, the following portions of an exchange occurred:

MR. KROLL: The court should know we have just a few minutes ago been before the Honorable Barbara Howe, Administrative Judge of the court. Mr. Smith waived his right to counsel, and he was denied his request for postponement due to his actions. I have spoken to the defendant who indicated to me he would elect a court trial at this time.

Mr. Smith, please stand up. Judge Cahill will advise you of some important rights, please.

THE DEFENDANT: Okay.

THE COURT: All right, I note that there is a postponement hearing request form on which Judge Howe has indicated her denial and it is dated today. And the charge in this case is theft?

. . . .

THE COURT: Has anyone coerced or threatened you, or promised you anything to give up your right to a jury trial?

THE DEFENDANT: Yes. Well, I wouldn't use the term coerced, but I more or less was forced to go in this direction.

THE COURT: To try the case?

THE DEFENDANT: Right.

THE COURT: But I am talking of your right to a jury trial.

THE DEFENDANT: I know I have a right to a jury. The reason I asked for the jury because on Friday being denied a postponement because I didn't have time to prepare myself for a trial and I had made attempts to get a Public Defender. But I was also hoping to afford myself an attorney to take my case. And I was depending on some, you know, money to come back off of an accident case, which it didn't come through. So by the time I did go down there and spoke to the Public Defender, so they told me I was a couple of days too late and they gave a letter, so

forth, told me to refer it to the court and request a postponement. This is how I ended up in this situation that I am today. And I want the court to understand that I had expected for Ms. Ferguson to be in court. She is the lady— I know this ain't the trial at this moment, but I am in here for her purposes, you know. She actually committed the theft and she jumped in my automobile.

THE COURT: I don't know who she is but I understand that. I mean, I don't understand it but I hear you. But you can't do anything about it at the moment.

THE DEFENDANT: She is supposed to clear me of this charge. She has called me while she was still locked up and—

. . . .

THE COURT: I assume this is something that he told Judge Howe. I would imagine this is what he asked for the postponement for.

MR. KROLL: He never mentioned that fact he had this chat with Ms. Ferguson at all in talking to Judge Howe.

THE COURT: Oh, he just asked for a postponement based upon the right to counsel?

THE DEFENDANT: Excuse me. Not being disrespect[ful], but I wasn't given the full opportunity to explain it. And was cut off.

THE COURT: Well, Mr. Kroll is correct. All I'm here is to find out is whether you want to—

THE DEFENDANT: Yes.

THE COURT: I did not rule on your request for postponement. That is Judge Howe's responsibility and not mine. I am here to try the case either with a jury, and I can bring jurors up now, or try it in front of me. But that is up to you. What I am trying to ascertain is whether you knowingly and intelligently, and without force or coercion are waiving your right to a jury trial. That is all I am asking you at the present time.

THE DEFENDANT: All right. I will go along with you.

. . . .

THE COURT: Either a jury trial or court trial. That is correct. That is all we are talking about at the moment.

THE DEFENDANT: If I was to go along with a court trial. But I also have in the record that I wish to have Ms. Ferguson present.

THE COURT: Certainly you can make a record of it. But the biggest thing I want to know, do you want jurors brought up? You can say it in front of the jurors in defending yourself if a witness is missing, if there is a valid basis for it. But do you want a jury trial? That is all I am asking.

THE DEFENDANT: No, sir, not at present.

THE COURT: And you indicated the only reason you prayed a jury trial in the first place was to gain some time for a postponement?

THE DEFENDANT: To gain some time, right.

THE COURT: But nobody forced you to give up your right to a jury trial? That is your own decision?

THE DEFENDANT: No, nobody forced me to take a jury or the court.

In *Maus v. State*, 311 Md. 85, 113, 532 A.2d 1066 (1987), the Court said: "[B]efore the trial court makes a finding of waiver, it must permit the defendant to explain the appearance without counsel." We have examined the transcript of the hearing before Judge Howe and determined that appellant was given a full opportunity to explain why he had appeared without counsel. In *Maus*, the Court of Appeals did not have available the defendant's reasons for not having counsel present because he was not given the opportunity by the trial judge. In the case *sub judice*, Judge Howe gave appellant a full opportunity to express his reasons. From the exchange we have cited, it appears that he had an accident from which he expected to receive compensation which he would use to hire a lawyer, but had no idea when, or even if, that money would ever be forthcoming. When given a chance to explain his reasons for not having a lawyer, he offered no further

information as to the accident, *i.e.*, whether he had obtained a civil attorney, had filed an action, or was negotiating with adjusters. He never gave any other explanation as to why he did not try to get a lawyer prior to February 23, when it was too late to obtain a public defender to represent him at the then scheduled trial date of March 4th.

■ In view of the numerous times District Court commissioners and judges had expressly informed appellant of the need to secure counsel and his numerous acknowledgments that he fully understood that need on this record, we do not perceive that Judge Howe erred in finding that appellant had waived his right to counsel by his inaction in failing to obtain counsel.

Appellant further asserts that the hearing and trial judges erred in not letting him fully explain another reason for his request for a postponement—a missing witness. As we perceive that which occurred before Judge Howe, appellant was afforded the opportunity to expound upon that additional reason. Appellant simply went no further in doing so.

■ We have additionally reviewed all of the record before both the District Court and the circuit court. The record clearly shows that no summons had been issued by appellant for the appearance of his missing witness at the originally scheduled District Court trial date of March 4th. No summons was issued for the appearance of the witness at the March 7th circuit court trial date. Neither the District Court nor the circuit court records contain any indication that appellant had made any efforts to obtain the appearance of this witness. When afforded the opportunity before Judge Howe (and we hold that he was afforded that opportunity), he proffered absolutely nothing in regard to any efforts made on his behalf to cause the appearance of this witness. Later, he merely, and baldly, informed Judge Cahill that he had "expected for Ms. Ferguson to be in court" without proffering any reason why he had the expectation.

In *Whack v. State,* 94 Md.App. 107, 117–19, 615 A.2d 1226 (1992), *cert. denied,* 330 Md. 155, 622 A.2d 1196 (1993), we opined:

> We begin with the basic proposition, recently reiterated in *Burgess v. State,* 89 Md.App. 522, 598 A.2d 830 (1991), *cert. denied,* 325 Md. 619, 602 A.2d 710 (1992), that "[r]ulings on requests for continuances are within the sound discretion of the judge and will not be disturbed on appeal absent an abuse of that discretion." 89 Md.App. at 534, 598 A.2d 830 (*citing Beachem v. State,* 71 Md.App. 39, 55, 523 A.2d 1033 (1987)). In *Wright v. State,* 70 Md.App. 616, 522 A.2d 401 (1987), we held
>
>> To show such an abuse of discretion, the party who requests the continuance must show:
>>
>> "(1) that he had a reasonable expectation of securing the evidence of the absent witness or witnesses within some reasonable time; (2) that the evidence was competent and material, and he believed that the case could not be fairly tried without it; and (3) that he had made diligent and proper efforts to secure the evidence."
>>
>> . . . .
>
> First, Whack failed to demonstrate that he had a reasonable expectation of securing the evidence of the absent witness within some reasonable time. . . . Whack did not state that he knew or had reason to know of Sampson's whereabouts on the date of the suppression hearing, nor did Whack state that he knew or had reason to know the reason for Sampson's absence. Thus, the bald assertion that bringing Sampson to court would be a "simple" task for a sheriff's deputy, is insufficient to produce the requisite reasonable expectation that Whack could secure Sampson's testimony within a reasonable time.
>
> . . . .
>
> Finally, Whack failed to demonstrate of record that he made diligent and proper efforts to secure Sampson's testimony. . . . [T]he record does not reflect that . . . Whack . . . made even the slightest attempt to call, locate, or

contact Sampson during that hiatus. Whack's request for the court to "initiate judicial compulsory process," while relevant, fails under the circumstances of this case to demonstrate or establish the requisite diligence necessary to reverse the trial court.

Appellant, despite being afforded an opportunity to do so, failed to even proffer the first and third prong of the requirements we iterated in *Whack, i.e.,* (1) that he had a reasonable expectation of securing the witness within a reasonable time; and (2) that he had been diligent in his efforts to obtain the presence of Ms. Ferguson.

Neither Judge Howe nor Judge Cahill erred.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**